74 F.3d 1248
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Leslie Elwin BAKER, Plaintiff-Appellant,
v.
PERFECTION HY-TEST, a subsidiary of the Marmon Corporation,
Defendant-Appellee.
 No. 95-6091.
(D.C.No. CIV-94-700-R)
 United States Court of Appeals, Tenth Circuit.
 Jan. 2, 1996.
 
 Before EBEL, McKAY, and LUCERO, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant Leslie Elwin Baker appeals from the district court's order granting summary judgment to defendant-appellee Perfection Hy-Test Company. Plaintiff alleged that defendant demoted and constructively terminated him in violation of the Age Discrimination in Employment Act, 29 U.S.C. 621-34 (ADEA) and Oklahoma public policy. We have jurisdiction pursuant to 28 U.S.C. 1291, and affirm.
 
 
 3
 Plaintiff was employed as water pump supervisor at defendant's Purcell, Oklahoma, facility. In July 1992, defendant reorganized that facility, eliminating and/or consolidating supervisory positions in several departments. Plaintiff and several other older supervisors lost their salaried, supervisory positions and were replaced generally by younger supervisors.
 
 
 4
 Defendant reassigned plaintiff to the nonsupervisory position of water pump specialist beginning August 17, 1992. At the time of his reassignment, plaintiff was fifty-five years old. Plaintiff's former position was consolidated with another supervisory job and assumed by a thirty-seven year old supervisor.
 
 
 5
 After the reassignment, plaintiff continued to work for defendant until January 31, 1994, when he resigned. This action followed.
 
 I.
 
 6
 "We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir.1994)(citing Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990)). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " Hagelin for President Comm. v. Graves, 25 F.3d 956, 959 (10th Cir.1994) (quoting Fed.R.Civ.P. 56(c)), cert. denied, 115 S.Ct. 934 (1995).
 
 II.
 
 7
 The district court found that plaintiff failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). See 29 U.S.C. 626(d)(2). There is also no indication of record that he filed a charge with the Oklahoma Human Rights Commission. See 29 U.S.C. 633(b). The district court concluded that his failure to file timely charges barred plaintiff's ADEA claims. We agree.
 
 
 8
 Plaintiff attempted to file a charge with the EEOC in March 1994, more than 300 days after his demotion.[2] Plaintiff argues that his untimely filing should be excused, either because the demotion was part of a continuing violation of his rights or because the limitations period was equitably tolled by defendant's conduct. We address each of these contentions in turn.
 
 A.
 
 9
 Plaintiff argues that the demotion was part of a pattern of continuing violation of his rights by defendant, which ended only with his resignation. Thus, he argues that the filing period only began to run on January 31, 1994, when he resigned. See Gray v. Phillips Petroleum Co., 858 F.2d 610, 614 (10th Cir.1988) (discussing continuing violation doctrine).
 
 
 10
 To benefit from the continuing violation doctrine, plaintiff must show that
 
 
 11
 [t]here [was] at least one instance of the discriminatory practice within the filing period ... and [that] the earlier acts [were] part of a continuing policy or practice that includes the act or acts within the statutory period. It is not sufficient merely that acts outside the required time limit had a continuing effect within the statutory time allowed for suit.
 
 
 12
 Martin v. Nannie & Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir.1993) (citation and footnote omitted).
 
 
 13
 Plaintiff asserts that a pattern of discriminatory acts continued during the period between his demotion and his resignation. He notes that during this period he had to train his replacement supervisor, received less pay and benefits than before, sometimes had to work the night shift, and was required to train other personnel without having authority over them. While these conditions may have been disagreeable to plaintiff, we cannot say that they involved continued acts of discrimination. Rather, they were merely continued effects of defendant's earlier decision to demote plaintiff. See Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610-11 (1st Cir.1994) (refusing to apply continuing violation theory in 42 U.S.C.1983 case where, after plaintiff director of a sports complex was demoted, he was denied master key to sports complex, had his mail opened, had employees hired for him, and another employee represented that she was director).
 
 
 14
 The only alleged discriminatory action here was plaintiff's demotion. Plaintiff was required to file a claim with the EEOC within 300 days of the date he was notified of the demotion.[3]
 
 B.
 
 15
 Plaintiff next argues that the claim filing period should be tolled. He correctly notes that the period for filing a charge is not jurisdictional and is subject to tolling. Equitable tolling applies where an employee "has been 'lulled into inaction by [his] past employer, state or federal agencies, or the courts.' " Hulsey v. K-mart, Inc., 43 F.3d 555, 557 (10th Cir.1994) (quoting Gray, 858 F.2d at 615).
 
 
 16
 Plaintiff argues he was misled concerning his right to file a charge by his plant foreman, Mr. Merriman. Soon after his demotion, plaintiff told Mr. Merriman that he was considering filing an age discrimination lawsuit against defendant. Mr. Merriman responded that restructuring was happening "all over the country," that plaintiff "couldn't sue," that he might try but he "wouldn't get to first base." Leslie Baker Deposition, Appellant's App., tab D1 at 143.
 
 
 17
 To warrant a tolling claim, an employer's statements must "rise to the level of active deception." Hulsey, 43 F.3d at 557 (citations omitted). "The limitations period will not be tolled unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Id. (citations omitted). Here, the plant manager's statements at most expressed an opinion concerning plaintiff's likelihood of success. There was no "active deception" sufficient to toll the 300-day deadline.
 
 III.
 
 18
 We turn next to plaintiff's state law claims. Oklahoma recognizes an exception to its at-will termination rule "in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy...." Burk v. K-mart Corp., 770 P.2d 24, 28 (Okla.1989). A tort remedy for violation of public policy exists in such cases, in addition to remedies provided by antidiscrimination statutes. See Tate v. Browning-Ferris, Inc., 833 P.2d 1218, 1222-31 (Okla.1992) (racial discrimination claim).
 
 
 19
 We have found no Oklahoma case evidencing willingness to extend this "narrow class of cases" to encompass a claim for wrongful demotion, however. "[T]he Oklahoma Supreme Court has been very precise in carving out narrow exceptions to the employment-at-will doctrine, and we are unwilling to unnecessarily expand those exceptions." Sanchez v. Philip Morris Inc., 992 F.2d 244, 249 (10th Cir.1993). Absent clear guidance to the contrary from the Oklahoma Supreme Court, we therefore hold that the public policy tort is not available for claims of demotion.
 
 
 20
 We believe that Oklahoma would extend this tort to protect victims of constructive discharge. Oklahoma has recognized a statutory claim for discriminatory constructive discharge. Wilson v. Hess-Sweitzer & Brant, Inc., 864 P.2d 1279, 1284 (Okla.1993) (adopting tort in worker's compensation context). We see no reason for distinguishing constructive from actual discharge for purposes of the tort.
 
 
 21
 Here, however, plaintiff has not shown that he was constructively discharged under the facts of this case. " 'Constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no choice but to quit.... The test is whether a reasonable person would view the working conditions as intolerable and would feel compelled to resign.' " Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir.1995) (quoting Wilson, 864 P.2d at 1283).
 
 
 22
 Plaintiff alleges that his demotion caused him embarrassment, loss of status, pay, and benefits, that he was required to train his replacement, and that other employees made jokes about him. An employee is required to act reasonably with respect to the employer's decision to reassign him. Large v. Acme Eng'g & Mfg. Corp., 790 P.2d 1086, 1089 (Okla.1990).
 
 
 23
 Plaintiff did not act reasonably by resigning. The record reveals that prior to his demotion, plaintiff struggled with the stress of his supervisory job. Plaintiff "broke down" in the plant manager's office in June 1992, left his job for at least two weeks, and sought psychological treatment for stress and job burnout. Later, after plaintiff resigned, he filed a worker's compensation claim in which he alleged "[j]ob stress as supervisor for 14 years." "Plaintiff's Dep. Exhibits," Appellant's App., Vol. I, tab C at 1. It would have been unreasonable for plaintiff to expect to return to a supervisory position which had caused him so much job stress.
 
 
 24
 Further, plaintiff remained with defendant after his demotion for a year and a half. Plaintiff's continued employment with defendant during this time period, along with the evidence of record, suggests that his situation was not so "intolerable" that a reasonable person would have felt "compelled to resign." Buchanan, 51 F.3d at 229. His work conditions were not ideal, but few work conditions are. Constructive discharge requires considerably more than plaintiff has shown here.
 
 
 25
 Plaintiff testified that pressure built up on him during this period because he felt he was still doing a supervisor's job. However, he was able to do his job well, and he got along well with his supervisors. Defendant paid him overtime, with the result that, at least initially, plaintiff made more than his replacement supervisor. Plaintiff continued to earn over 90% of his pre-demotion gross pay. During his last six months with defendant, the incidents that made plaintiff feel "rejected" by his co-workers no longer occurred.
 
 
 26
 Finally, plaintiff has asserted other reasons for his resignation. For example, he stated in his worker's compensation case that the real reason he quit was his breathing problem. While conditions at work may have contributed to his decision to quit, the evidence shows that these conditions simply did not rise to the level of constructive termination.
 
 
 27
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.[4]
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Plaintiff contends that he met with an EEOC representative in March 1994, who told him that his charge was untimely, and refused to accept it. We have assumed, for purposes of argument only, that an attempted filing would have tolled the statute had the attempt been made within 300 days of plaintiff's demotion
 
 
 [3]
 Our holding in part III of this order and judgment, that plaintiff has failed to show that he was constructively discharged, makes it unnecessary to determine whether plaintiff's constructive discharge claim is similarly time-barred
 
 
 [4]
 Plaintiff has failed to properly number his appendix filed with this court, as required by Fed. R.App. P. 30(d). We admonish plaintiff's counsel to comply with the Rules of Appellate Procedure in future filings with this court