2005-NMSC-003

109 P.3d 280

**Don GORMLEY, Plaintiff–Petitioner,**

v.

**COCA–COLA ENTERPRISES,**
Defendant–Respondent.

**No. 28,441.**

Supreme Court of New Mexico.

Feb. 28, 2005.

Martin & Lara, W.T. Martin, Jr., Carlsbad, NM, for Petitioner.

Huffaker & Conway, P.C., Anne Marie Turner, Albuquerque, NM, Miller & Martin, P.L.L.C., T. Harold Pinkley, Nashville, TN, for Respondent.

**OPINION**

BOSSON, Chief Justice.

{1} In this employment dispute involving a claim of constructive discharge, the Court of Appeals affirmed summary judgment in favor of the employer, Coca–Cola Enterprises (Defendant). On certiorari, we conclude, as a question of first impression in New Mexico, that Don Gormley (Plaintiff) has not shown that his working conditions rose to the level necessary to support a claim of constructive discharge. Accordingly, we affirm the grant of summary judgment regarding Plaintiff's constructive discharge claim.

**BACKGROUND**

{2} We take the following background from the allegations leveled by the parties on summary judgment. Starting in 1983, Plaintiff was employed by Southwest Coca–Cola (Southwest) as a driver and deliveryman. The job involved heavy manual labor, including the requirement that he lift substantial weight. In 1994, when Plaintiff was 58, management at Southwest moved Plaintiff to a warehouse position with lighter duties and less hourly pay. Plaintiff's warehouse duties included stacking containers, janitorial work, running errands, filling out paperwork, and cleaning truck trailers. The record indicates that Plaintiff's supervisors, Robert Bolin and Ronnie Hill, initiated the move from the route to the warehouse out of concern for Plaintiff's health and safety. They feared that the workload may have rendered Plaintiff more vulnerable to an accident or injury. Upon Plaintiff's reassignment to the warehouse, he was told that he would now work a fifty-five-hour work week to maintain the same income he had received as a route driver.

{3} In 1998, Defendant acquired Southwest by merger. Soon after the acquisition, Plaintiff's new supervisor, Ruben Cardona, cut Plaintiff's fifty-five-hour work week, first by five hours and then by another five hours, and his warehouse duties were changed to include heavy lifting. At the time of the cuts, management was implementing a policy to reduce overtime hours for all employees. Plaintiff was assigned some route duties involving heavy lifting. Former supervisor Bo-

lin advised Cardona that Plaintiff had been promised a fifty-five-hour work week and lighter duties, and that Plaintiff was risking injury by performing the more physically demanding duties assigned by Cardona. Despite Bolin's protest, Cardona expressed indifference, and Plaintiff's working conditions did not improve.

{4} Plaintiff never personally protested the changes in his schedule and duties, nor did he file a complaint with his employer. Plaintiff acknowledges that two younger workers did the heavy lifting in the warehouse for him. Plaintiff alleges Cardona would complain to Plaintiff's immediate supervisor about the quality of his work. However, Plaintiff was never reprimanded or otherwise disciplined for his job performance. In 1999, roughly fifteen months after Defendant's acquisition of Southwest, Plaintiff tendered his resignation giving a month's notice.

{5} In May 2000, Plaintiff initiated the present litigation, claiming breach of implied employment contract based on the promise of wages and hours, wrongful termination, age discrimination, constructive discharge, and in an amended complaint, disability discrimination. Defendant responded with a motion for summary judgment on all claims, which the district court ultimately granted.

{6} The Court of Appeals reversed the award of summary judgment on the breach of implied contract, from which Defendant has not appealed, and in a divided opinion, the court affirmed the district court on all other counts. *Gormley v. Coca-Cola Enters.*, 2004-NMCA-021, 135 N.M. 128, 85 P.3d 252. We granted certiorari to review solely the summary judgment against Plaintiff's claim of constructive discharge which was the focal point of disagreement among the members of the Court of Appeals panel.

{7} Regardless of what we decide today, Plaintiff's breach of implied contract claim, based on the alleged promise of a certain level of hours and wages, will proceed to trial. The question on certiorari is whether that trial will include Plaintiff's claim for constructive discharge, which, according to the parties' explanation at oral argument, would allow Plaintiff to claim consequential damages for breach of implied contract beyond the time of his resignation.

## DISCUSSION

### Summary Judgment

 {8} Summary judgment is proper when "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted). We look at whether, as a matter of law, the defendant is entitled to summary judgment. *Id.* These legal questions are reviewed de novo. *Id.* "When reviewing a trial court's grant of summary judgment, we view the facts in the light most favorable to the party opposing summary judgment, drawing all inferences in favor of that party." *Stieber v. Journal Publ'g Co.*, 120 N.M. 270, 271–72, 901 P.2d 201, 202–03 (Ct.App.1995).

### Constructive Discharge

 {9} Constructive discharge is not an independent cause of action, such as a tort or a breach of contract. Instead, constructive discharge is a doctrine that permits an employee to recast a resignation as a de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure. *See Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 32 Cal. Rptr.2d 223, 876 P.2d 1022, 1030 (1994) ("Even after establishing constructive discharge, an employee must independently prove a breach of contract or tort in connection with employment termination in order to obtain damages for wrongful discharge."). An employee who resigns from employment must prove constructive discharge as part of establishing a wrongful termination. *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 472 (4th Cir.2002). Plaintiff, in the case before us, must establish a constructive discharge if he wants to pursue compensatory damages for breach of contract beyond the time of his resignation.

██ {10} Although no New Mexico opinion sets forth the elements necessary to prove constructive discharge, numerous federal opinions from the Tenth Circuit discuss that standard. An employee must allege

facts sufficient to find that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign. *See Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986). "Essentially, a plaintiff must show that she had no other choice but to quit." *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir.1997) (quoted authority omitted). "The bar is quite high" for proving constructive discharge. *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir.2002).

■ {11} Examples of adverse employment actions that rise to the level of constructive discharge include "a humiliating demotion, extreme cut in pay, or transfer to a position in which [the employee] would face unbearable working conditions." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 2347, 159 L.Ed.2d 204 (2004). Other examples include: an employer's threat of being fired; overt pressure to resign and accept early retirement; dramatic cut in pay; and retaliatory measures (e.g., discrimination, unreasonable criticism, involuntary transfer). *See Douglas v. Orkin Exterminating Co.*, No. 98–8076, 2000 WL 667982, at *4, 215 F.3d 1336 (10th Cir. May 23, 2000) (unpublished opinion)[1] (holding that evidence of a demotion and lower pay supported reversal of summary judgment); *Keller v. Bd. of Educ.*, 182 F.Supp.2d 1148, 1157 (D.N.M.2001) (holding that constructive discharge claim was supported by the record and justified denial of summary judgment when employee was reassigned to a job without a job title and description, her office was in a supply closet, and her salary was cut by more than one-half, amounting to less than her retirement benefit); *Gower v. IKON Office Solutions, Inc.*, 177 F.Supp.2d 1224, 1233 (D.Kan.2001) (holding claim of constructive discharge was supported by evidence that the worker was given twenty-four hours to sign a new contract limiting the number of accounts he could service, reducing his commission in one account from $8,000 to $3,000

per month, and changing his reporting requirements); *Goodwin–Haulmark v. Menninger Clinic, Inc.*, 76 F.Supp.2d 1235, 1239 (D.Kan.1999) (concluding that overt pressure to resign raised genuine issues of material fact to justify denial of summary judgment regarding constructive discharge); *James v. Sears, Roebuck & Co.*, 21 F.3d 989, 993 (10th Cir.1994) (finding that systematic threats and pressure to retire constituted constructive discharge).

■ {12} The specific facts of the employment condition, and the severity of its impact upon the employee, are pivotal in determining whether the claim rises to the level of constructive discharge. In many cases, the circumstances surrounding resignation are not egregious enough to support a claim. *See Gioia v. Pinkerton's, Inc.*, 194 F.Supp.2d 1207, 1228 (D.N.M.2002) (stating that plaintiff's change in duties and pay reduction of approximately 9.1% did not constitute constructive discharge); *Garrett*, 305 F.3d at 1221 (intimidating behavior by supervisors resulting in lower performance evaluations and repeated denial of requests to transfer did not amount to constructive discharge); *Baker v. Perfection Hy–Test*, No. 95–6091, 1996 WL 1162, *9–11, 74 F.3d 1248 (10th Cir. Jan. 16, 1996) (unpublished opinion) (holding a demotion, a ten percent reduction in pay and jokes by co-workers directed at plaintiff did not amount to constructive discharge); *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858 (10th Cir.2000) (holding that change in location of desk, monitoring of telephone calls, ostracism by fellow employees, and suggestion by supervisor to transfer did not amount to constructive discharge); *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir.2004) (stating that "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign") (quoted authority omitted).

---

1. It is the practice of this Court not to cite unpublished opinions. However, since this is a case of first impression in New Mexico, we are including two federal unpublished opinions to provide additional factual examples of what

courts have determined to constitute or not to constitute constructive discharge. These opinions are cited for the limited purpose of illustration. It continues to be the practice of this Court to only rely on published cases as precedent.

{13} Plaintiff bases his claim for constructive discharge on four factors: criticism of Plaintiff's job performance, the loss of his guaranteed fifty-five-hour work week, a reduction in pay, and the loss of assignment to lighter duties. In each case, the record on summary judgment does not demonstrate employment conditions so severe that a reasonable person in Plaintiff's situation would have felt compelled to resign.

{14} Clearly, the reduction in Plaintiff's fifty-five-hour work week to a forty-five-hour work week is not sufficient to amount to constructive discharge. The loss of overtime hours did not reduce Plaintiff's base pay. Though he was earning less than he had been before, the change in pay was not such a material change that, when viewed objectively, would force him to leave. *See Gioia*, 194 F.Supp.2d at 1228; *see also King v. AC & R Adver.*, 65 F.3d 764, 767–68 (9th Cir. 1995) (holding that compensation reduction from $235,000 to $175,000 was insufficient as a matter of law to cause constructive discharge); *McCann v. Litton Sys., Inc.*, 986 F.2d 946, 952 (5th Cir.1993) (ruling that 12% decrease in pay plus loss of some supervisory responsibilities was not a constructive discharge).

{15} Plaintiff also lost some overtime hours but did not suffer a substantial cut in pay. A cut in pay must be an extreme change in pay to support a constructive discharge claim. *Pennsylvania State Police*, 124 S.Ct. at 2347. Plaintiff still retained some of his overtime hours and was not paid less for the hours he worked. Management at the facility was instructed to reduce the number of overtime hours for all employees and was not focused just on Plaintiff. Employers are not required to continue to provide overtime hours.

{16} Plaintiff argues he was subjected to a "barrage of criticism." He alleges that he was exposed to continuous criticism such that he felt constant pressure and discomfort. However, during Plaintiff's deposition when asked about criticism from his new manager, he stated, "whenever he talked to me, to my face he was real nice and everything." Plaintiff testified Cardona would then complain to Plaintiff's immediate supervisor, criticizing the quality of Plaintiff's work. Even assuming the truth of the allegations, they hardly rise to the level of conditions that would leave Plaintiff no choice but to quit. "An objectively reasonable person would expect one's supervisor to criticize what he perceived as his employee's poor performance. . . ." *Smith v. Aaron's Inc.*, 325 F.Supp.2d 716, 727 (E.D.La.2004). Additionally, Plaintiff never received any written warnings or reprimands. Such generalized claims of criticism are not enough to amount to constructive discharge. *See Aikens v. Banana Republic, Inc.*, 877 F.Supp. 1031, 1039 (S.D.Tex.1995) ("[T]he mere fact that [plaintiff] experienced 'pressure' or was 'nitpicked' does not establish such intolerable working conditions as to give rise to a constructive discharge.").

{17} Analytically, Plaintiff's claim that the loss of lighter duties jeopardized his safety is sound, but unfortunately the claim is not sufficiently supported in the record. Although Plaintiff was removed from the easier cashier and warehouse duties and assigned jobs involving some heavy lifting, two of the younger workers in the warehouse were available to help him. There was no evidence presented on summary judgment that Plaintiff actually had to perform heavy lifting, or that he was placed in a situation where that was likely to happen. Plaintiff did not suffer any injuries resulting from the change in duties, and he made no showing that his health was endangered. Mere speculation about what could possibly happen is not sufficient.

{18} Plaintiff's change in duties, though perhaps improvident or even insensitive on the part of his employer, do not rise to the level of constructive discharge. *Yearous*, 128 F.3d at 1356–57 ("[A] series of questionable judgments leading to difficult working conditions does not alone support a claim of constructive discharge. . . ."). We acknowledge that there are circumstances in which a change of duties endangering an employee's safety might well rise to the level of constructive discharge. Plaintiff simply never presented such a case on summary judgment. Additionally, Plaintiff never directly claimed

that safety concerns caused him to leave. Plaintiff never established a sufficient nexus between those concerns and his resignation.

{19} Other factors may be considered to determine whether the worker's resignation was voluntary or de facto compulsory. For example, some courts require that the employee notify the employer of the problem, and afford the employer a sufficient opportunity to resolve it before leaving. As an example, in *Woodward v. City of Worland,* 977 F.2d 1392, 1402 (10th Cir.1992), the Tenth Circuit suggested that a reasonable person would have filed a formal complaint in response to sexual harassment prior to resigning and barred the worker's claim as a matter of law.

> Here, [the employee] apparently was able to work under these circumstances for several years, and there was no showing either that the situation got substantially worse just before she quit or that requesting disciplinary action against [the employer] would have been ineffective. Hence, on this record, [the employee] failed to establish a genuine dispute as to whether a reasonable person would have believed that there was no reasonable alternative to resignation.

*Id.*

{20} Defendant also points to the fact that, even after these changes occurred, Plaintiff remained on the job for over a year. Plaintiff investigated his social security benefits for early retirement. When Plaintiff submitted his letter of resignation he did so by giving a full month's notice. Plaintiff was asked by Cardona to reconsider and stay on the job, but refused and resigned.

{21} Defendant asks that we issue a bright-line rule requiring prior notice in all instances, and stipulating a time within which an employee must leave to complain of constructive discharge. We decline to do so. Notice is one factor out of many for the factfinder to consider when looking at the specific circumstances of each case. The same is true with respect to the circumstances surrounding how long the employee remains on the job and continues to suffer from onerous conditions. In the case before us, we affirm summary judgment not because of any one factor, but because Plaintiff did not create a genuine issue of material fact to support his constructive discharge claim.

## CONCLUSION

{22} As a matter of law, Plaintiff did not create a genuine issue of material fact to support his constructive discharge claim. Therefore, we affirm the opinion of the Court of Appeals affirming summary judgment for Defendant.

{23} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHAVEZ, Justices.