This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DEVONNA REYES,**

Plaintiff-Appellant,

v.                                                      No. 33,147

**FARMERS INSURANCE EXCHANGE,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sheri A. Raphaelson, District Judge**

O'Friel & Levy, P.C.
Daniel J. O'Friel
Pierre Levy
Aimee Bevan
Santa Fe, NM

Berardinelli Law Firm
David J. Berardinelli
Santa Fe, NM

for Appellant

Lewis Roca Rothgerber LLP
Steven J. Hulsman
Erin E. Langenwalter
Matthew W. Park
Ross L. Crown
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}     Plaintiff Devonna Reyes appeals the district court's grant of summary judgment in favor of Defendant Farmers Insurance Exchange (Farmers) on her claim of constructive retaliatory discharge.  The district court concluded that Plaintiff failed to make a prima facie showing that she was constructively discharged and retaliated against for complaining about Farmers' alleged "illegal" claim settling policies.  We agree with the district court that Plaintiff failed to produce evidence that she was retaliated against for complaining about or refusing to comply with claim settling policies she later claimed were illegal and against public policy.  Accordingly, we affirm.

**BACKGROUND**

{2}     Farmers presented the following evidence in support of its motion for summary judgment.  Plaintiff began working for Farmers as a claims adjuster in January 2008.  Her duties included investigating claims, confirming coverage, evaluating liability and damages, and negotiating settlements.  During Plaintiff's employment, Farmers had a claims settling process entitled "Early Contact Settlements" (ECS) which, according to Plaintiff, required claims adjusters to settle a large percentage of claims within sixty days of the claim being made.  Plaintiff contends the ECS program violated public

policy and that it was her complaints about and refusal to comply with the program that resulted in Farmers' retaliatory behavior toward her.

{3}    Plaintiff complained about various workplace issues throughout her tenure with Farmers.  In June 2008, Plaintiff filed a letter of complaint with her supervisors regarding "unreasonable" goals and expectations being placed on her, specifically in regard to her work load, which often caused her to work additional hours.  Plaintiff stated in the letter that she was not "receiving comparable compensation for what [she was] putting into the company."  Plaintiff based this expectation on her belief that her "settlement numbers have surpassed [her] fellow new hires."

{4}    In August 2009, Plaintiff filed a complaint with Farmers' human resources department to document "odd run-in[s]" with management.  These incidents included Plaintiff being accused of attempting to stage a walk-out of claims adjusters, being sent home for an alleged dress code violation, and reprimands from her supervisors regarding "immaturity issues."  Plaintiff believed all of these allegations were unfounded, and she was concerned that her supervisors were not appreciating that she had consistently achieved or far exceeded Farmers' goals.

{5}    In February 2010, Farmers reprimanded Plaintiff for engaging in improper communications with a first party claimant.  We refer to this incident as the first party settlement email.  Plaintiff had sent an email to a claimant stating, "I do have an offer

ready for you—however—despite both our efforts, my supervisor, Aimee Valenzuela, would not approve any wage loss [damages]." Plaintiff received a verbal reprimand from her supervisor due to this incident. The memo detailing that conversation stated that (1) Plaintiff's email to the claimant did not reflect the correct company entity, (2) the email violated Farmers' policy that all initial offers should be communicated verbally, followed up in writing, and copied to the claims file, and (3) offers to claimants should not indicate that the claims adjuster is in disagreement with the offer. Plaintiff also received a "formal warning for performance" which reiterated these issues and the steps that needed to be taken in the future to ensure that these issues did not arise again. The formal warning concluded by stating that it was a "last chance agreement" and that "[a]ny further incidents of failure to follow the liability strategy with regard to correct company identified or appropriate written offers . . . will result in immediate termination of employment."

{6} The same day Plaintiff received the "last chance agreement," she again contacted Farmers' human resources department. In her email, Plaintiff recounted numerous instances which she believed spoke "volumes to the gender based discrimination and retaliation against [her]" following her August 2009 complaint to human resources. Specifically, Plaintiff complained that her supervisor had "gone out of her way to make [her] job as difficult as possible." In Plaintiff's estimation, this

4

included unfair scrutiny of her work, increased responsibilities, failure to return her calls and emails, and criticism of her decisions. Plaintiff also complained, among other things, that her vacation requests were denied and that her work-from-home privileges had been revoked. Plaintiff did not raise any allegations reflecting concerns about Farmers' claims settling practices.

{7}     Later that month Plaintiff took a Federal Medical Leave Act leave of absence due to health conditions, including depression and anxiety. After nearly five weeks, Farmers contacted Plaintiff after her doctor released her to return to work. Farmers requested that Plaintiff provide it with information to determine what accommodations were needed for Plaintiff under the Americans with Disabilities Act. Plaintiff did not respond to this request. Instead, nearly one month later, Plaintiff tendered her resignation. Plaintiff stated that "working conditions at Farmers are intolerable." Among other complaints, Plaintiff for the first time stated that "I have forced myself to pursue company goals (especially increasing ECS goals) that have compromised my beliefs, morals, ethics, and health."

{8}     Shortly thereafter, Plaintiff filed suit against Farmers. The district court granted summary judgment in favor of Defendant on Plaintiff's retaliatory discharge claim. Plaintiff appeals.

**DISCUSSION**

**{9}** Plaintiff argues that she produced evidence that created an issue of material fact on the question of whether she was constructively terminated in retaliation for complaints regarding Farmers' claims settling policies. Constructive discharge is not a claim in itself; rather, it is a prerequisite showing that must be made to establish retaliatory discharge where the claimant has resigned. *Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, ¶ 9, 137 N.M. 192, 109 P.3d 280 ("Constructive discharge is not an independent cause of action. . . . Instead [it] is a doctrine that permits an employee to recast a resignation as a de facto firing[.]"). However, because we conclude below that Plaintiff produced no evidence that she complained about Farmers' settlement policies prior to her resignation, we need not consider whether Plaintiff's resignation constituted a constructive discharge.

**Standard of Review**

**{10}** We review summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see* Rule 1-056(C) NMRA. The appellate courts "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the

merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). The party moving for summary judgment must make a prima facie showing and come forward with "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Rivera v. Brazos Lodge Corp.*, 1991-NMSC-030, ¶ 5, 111 N.M. 670, 808 P.2d 955. "Once this prima facie showing has been made, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted).

**Retaliatory Discharge**

{11} A claim of retaliatory discharge "allows a discharged at-will employee to recover in tort when his [or her] discharge contravenes a clear mandate of public policy." *Chavez v. Manville Prods. Corp.*, 1989-NMSC-050, ¶ 16, 108 N.M. 643, 777 P.2d 371. To establish a retaliatory discharge claim, the employee must demonstrate that "he [or she] was discharged because he [or she] performed an act that public policy has authorized or would encourage, or because he [or she] refused to do something required of him [or her] by his [ or her] employer that public policy would condemn." *Id.* (internal quotation marks and citation omitted). "The employee must also how a causal connection between his [or her] actions and the retaliatory discharge

7

by the employer." *Shovelin v. Cent. N.M. Elec. Co-op, Inc.*, 1993-NMSC-015, ¶ 24, 115 N.M. 293, 850 P.2d 996. Therefore, because Plaintiff contends that the ECS program violates public policy, to avoid summary judgment Plaintiff must demonstrate that there is a question of fact whether the incidents she contends led to her constructive discharge were caused by her complaints about or refusal to comply with the allegedly illegal claims settling policy.

{12} We understand Plaintiff's argument to be that her June 2008 complaint constituted a complaint about the illegality of the ECS program, that following that complaint, she was subjected to intolerable working conditions as outlined above, and that the reasons given for her discipline in the "last chance memo" were pretextual because she was truly being disciplined for objecting to, or refusing to comply with, the illegality of the ECS program.[1] Plaintiff's brief provides an extensive review of why Farmers' ECS program violates New Mexico law and public policy. Because we conclude that Plaintiff produced no evidence establishing that she complained about the ECS program prior to her resignation, we need not determine whether the ECS

---

[1]Plaintiff claims in her reply brief that it was not just the ECS program but Farmers' liability strategies as a whole that form the basis of her claim. However, this argument is belied by the fact that Plaintiff's argument and evidence regarding the alleged illegality of Farmers' claim settling policies only highlight the ECS program. Regardless, even if we were to assume that Farmers' liability strategies as a whole violated public policy, it would not change our holding in this case because Plaintiff did not produce evidence that she complained about the illegality of Farmers' liability strategies prior to the alleged incidents of harassment.

8

program was contrary to public policy. We will assume solely for the purpose of our analysis that the ECS program violated public policy.

{13} We conclude that Plaintiff failed to present evidence supporting her claim of retaliatory action by Farmers. First, we are unpersuaded that Plaintiff's June 2008 complaint constituted a complaint about the ECS program. Plaintiff admits that she did not mention the ECS program in her June 2008 complaint, but she stated during her deposition that it was "implied" that she complained about the program. Our review of the June 2008 complaint reveals nothing suggesting that Plaintiff complained about the illegality of the ECS program. Instead, Plaintiff complained that Farmers' expectations were too high and that she was not being compensated to the degree she felt she deserved. In fact, in support of her complaint, Plaintiff emphasized that her settlement numbers exceeded those of many of her colleagues. Furthermore, Plaintiff admitted in her deposition that her complaint regarding Farmers' goals and expectations, even assuming it was directed toward the ECS program, was not about the illegality of the ECS program, but about the increased workload the settlement policy necessitated.

{14} In concluding that Plaintiff did not complain about the ECS program in her June 2008 complaint, we are also unpersuaded that the alleged workplace harassment Plaintiff experienced over the next two years was a result of her alleged objections to

the ECS program. That is not to say that these incidents do not reveal a strained relationship between Plaintiff and her supervisors. However, these incidents cannot be evidence of retaliation by Farmers for Plaintiff's objections to the ECS program if Plaintiff never objected to the ECS program prior to the incidents.

{15} For this same reason, we are unconvinced that the discipline Plaintiff received for the first party settlement email was a pretextual reason for Farmers to retaliate against Plaintiff for her refusal to comply with the ECS program. Plaintiff produced no evidence that she had complained of the ECS program prior to the first party settlement email that would have given Farmers the motivation to retaliate against her. Instead, as indicated in the two memos regarding the incident, Plaintiff was disciplined for, among other things, telling the claimant that she disagreed with the offer of settlement. Plaintiff has not provided evidence as to why this discipline would be contrary to law or public policy.

{16} In sum, while Plaintiff lodged many complaints during her time with Farmers, including complaints about her salary, workload, and her supervisor, she produced no evidence that she complained about the illegality of Farmers ECS program or indicated a refusal to comply with the policies before her resignation. Because it was Plaintiff's alleged refusal to comply with a claims settling process she believed to be against public policy that formed the basis of her claim that she was retaliated against,

10

this absence of evidence is fatal to her claim. Accordingly, we affirm the district court.

**CONCLUSION**

{17} For the foregoing reasons, we affirm the district court.

{18} **IT IS SO ORDERED.**


_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**



_____

**MICHAEL D. BUSTAMANTE, Judge**



_____

**M. MONICA ZAMORA, Judge**