FILED
United States Court of Appeals
Tenth Circuit

April 30, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOLLENE PROVENCIO,

　　Plaintiff - Appellant,

v.

INTEL CORPORATION,

　　Defendant - Appellee.

No. 18-2090
(D.C. No. 1:16-CV-01268-JCH-JHR)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Jollene Provencio appeals from the district court's grant of summary judgment

in favor of Intel Corporation on her complaint asserting retaliation in violation of the

New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1 to 28-1-15 (NMHRA).

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

Provencio worked for Intel for nearly 20 years.  In March 2015, she participated as a witness in an internal investigation of another employee's age-discrimination complaint.  Although Provencio did not tell the investigator she had witnessed age discrimination, she did complain that some of her supervisors had created a hostile work environment.  She described a female supervisor, Janice Lee, as a bully who seemed to have issues with women, and she stated that a male supervisor, Randie Dorrance, would not write up any managers.

A few months later, Provencio's direct supervisor, Keith Baumgardner, told her that three other managers—Lee, Dorrance (who was Baumgardner's supervisor), and Jeff Kiehne—had complained that she was unapproachable and difficult to work with.  Baumgardner had not received complaints about Provencio's job performance before she participated in the internal investigation.  Although Baumgardner was pressured by Dorrance to coach Provencio pursuant to Defendant's progressive discipline policy, he disagreed with the other managers' criticisms and he told her not to worry about them.  Baumgardner did not tell Provencio that he was giving her official coaching.  She told Baumgardner that she believed the other managers were retaliating against her for participating in the internal investigation.

At about the same time, Dorrance reduced Provencio's job duties by 20-30% by placing Lee in a lead role on a team that Provencio had previously held.  Lee initially told Baumgardner that Provencio should not attend team meetings because

2

she would be argumentative.  Provencio eventually attended a few meetings, serving only as a minute-taker.

Colleagues began ignoring Provencio's emails, which interfered with her job duties.  When she appealed to Lee for help, Lee also ignored her emails.  Her peers began isolating her, she became nervous and scared, and her health was affected.  Kiehne also reneged on a promise to allow Provencio to use a spare work room, which he instead reserved for himself.

In June 2015, Provencio complained about retaliation to Intel's human resources department (HR).  HR investigated but concluded it could not substantiate her claim that Kiehne or Lee had retaliated against her for acting as a witness in the internal investigation.  The investigator found no evidence that employees in Provencio's organization knew that she had participated in that investigation.  HR did find that Kiehne should be formally coached for stating that employees should shut their mouths if they wanted to keep their jobs, and that Dorrance should be formally coached for instilling fear in his staff, modeling inappropriate behavior, and being a poor manager.  Dorrance pressured the investigator to reveal who had submitted a complaint to HR.

Baumgardner advised Provencio to seek a new position with Intel in a different department.  Frustrated by the ongoing hostility at work, she attempted to do so in November and December 2015.  Intel could have, but did not transfer Provencio to a new department.  Around that time, Dorrance again pressured Baumgardner to coach Provencio about her approachability.  Baumgardner continued to believe that

3

coaching was not warranted. When he met with Dorrance and Kiehne to discuss their issues with Provencio, Baumgardner confirmed to Dorrance that she had been involved in several HR issues. HR subsequently coached Baumgardner for making this disclosure.

Before Provencio participated in the internal investigation, she had been rated as a "Regularly High Performer" whose performance "Exceeded Expectations." But Intel downgraded her job performance rating to "Successful" in her annual review for 2015. The lower rating affected her compensation.

In January 2016, Provencio complained again to HR about ongoing retaliation by Kiehne and Dorrance. In early March 2016, she filed an internal report alleging that a co-worker who reported to Kiehne had made statements in the workplace about gun violence that made her fearful. In her complaint, Provencio noted she had previously reported Kiehne for insinuating gun violence against an employee.

Provencio took a leave from her job at Intel from March 22 to April 28, 2016, to deal with the stress and anxiety caused by her work environment. During that period, she received a job offer from another employer. She gave written notice that she was resigning when she returned to work at Intel. She privately told Baumgardner that she was leaving Intel due to the hostile work environment. She felt that, after her two complaints about retaliation for her participation in the internal investigation, her only option was to quit. Before her resignation, Intel had not threatened her with being laid-off, demoted, or disciplined. Provencio unsuccessfully

4

attempted to rescind her resignation notice after Intel subsequently announced a voluntary separation program.

Provencio filed this lawsuit alleging a single state-law claim: retaliation in violation of the NMHRA, which provides: "It is an unlawful discriminatory practice for . . . any person or employer to . . . engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the Human Rights Act[.]" N.M. Stat. Ann. § 28-1-7(I)(2).[1] Intel moved for summary judgment. The district court granted the motion, holding that Provencio failed to establish a prima facie claim of retaliation because she did not come forward with evidence that Intel took an adverse action against her. More specifically, the court held that she did not present evidence from which a reasonable jury could conclude that she had been constructively discharged.

## II.  Discussion

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable

---

[1] The district court had diversity jurisdiction under 28 U.S.C. § 1332.

5

inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Hiatt*, 858 F.3d at 1315 (internal quotation marks omitted).

"[I]t is appropriate to rely upon federal civil rights adjudication for guidance in analyzing a claim under the [NMHRA]." *Gonzales v. N.M. Dep't of Health*, 11 P.3d 550, 557 (N.M. 2000). In particular, New Mexico courts apply the burden-shifting analytical framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Gonzales*, 11 P.3d at 557. Under that framework, "a plaintiff bears the initial burden of establishing a prima facie case." *Id.* "To prove a prima facie case of retaliation, [Provencio] needed to show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events." *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 72 (N.M. 2004). The district court held that her claim failed on the second element because a reasonable jury could not conclude that she had been constructively discharged.[2]

In her opening brief, Provencio argues that the district court applied the wrong standard for determining whether the evidence supported a finding that she suffered an adverse employment action.[3] The court held that a constructive discharge "occurs

---

[2] Provencio also alleged that the hostile work environment constituted an adverse employment action. The district court did not examine that allegation because she "made no legal arguments about a hostile work environment, even though that type of adverse action carries with it a specific legal standard." Aplt. App., Vol. 2 at 301. Provencio does not challenge that ruling on appeal.

[3] Provencio also argues in her opening brief that the district court erred in holding that her participation in the internal investigation did not amount to protected

when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Aplt. App., Vol. 2 at 301 (internal quotation marks omitted). For this proposition, the district court relied on *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002), and *Gormley v. Coca-Cola Enterprises*, 109 P.3d 280, 282-83 (N.M. 2005).

Provencio argues that the correct standard for adverse action applicable to her NMHRA retaliation claim is set forth in the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). *Burlington Northern* held that "the antiretaliation provision [of Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64. Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted). Provencio contends that she presented sufficient evidence of a materially adverse action under the *Burlington Northern* standard to demonstrate a prima facie retaliation claim.

There is a problem with Provencio's asserted legal theory: she did not present it in the district court. Intel states that Provencio has changed her position on the

---

activity under the first element of her prima facie retaliation claim under the NMHRA. We need not address this issue to resolve her appeal.

7

applicable standard on appeal: "She changes from arguing that the constructive discharge standard applies to arguing that a lesser adverse action standard applies." Aplee. Br. at 12. In this court, an appellant is required to cite in her opening brief the precise references in the record where an appeal issue was raised and ruled on in the district court. 10th Cir. R. 28.1(A). Provencio has not satisfied this briefing requirement with respect to her *Burlington Northern* argument.

Our independent review of the record indicates that Intel contended in its summary judgment motion that Provencio's retaliation claim failed because the evidence did not support a finding that she was constructively discharged. Aplt. App., Vol. 1 at 78-82. Citing *Gormley* and other cases in accord, Intel argued that the applicable standard was whether Provencio had no other choice but to quit. *Id.* at 78. In her summary judgment response, Provencio cited *Gormley*, *accepted* the standard advanced by Intel, and argued that her working conditions were so intolerable that any reasonable person would have been compelled to resign. *Id.*, Vol. 2 at 126-27, 132. She did not argue in the district court that she need only show actions by Intel that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks omitted).

"It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). "An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d

8

1144, 1150 (10th Cir. 2012) (internal quotation marks omitted). A theory that was not raised in the district court is forfeited. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). "[W]e will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Id.* This is so because

> [o]ur adversarial system endows the parties with the opportunity—and duty—to craft their own legal theories for relief in the district court. It is the significant but limited job of our appellate system to correct errors made by the district court in assessing the legal theories presented to it, not to serve as a second-shot forum where secondary, back-up theories may be mounted for the first time.

*Id.* at 1130 (ellipsis and internal quotation marks omitted). Here, Provencio makes no attempt to show how her new legal theory satisfies the plain error standard. "And the failure to do so . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131.

Provencio does not argue in her opening brief that her evidence nonetheless satisfies the standard for an adverse employment action that the district court applied. An appellant's opening brief must identify "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). "Consistent with this requirement, we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). "Stated differently, the omission of an issue in an opening brief generally forfeits appellate consideration of that issue." *Id.*

Provencio does address in her reply brief the standard applied by the district court in granting summary judgment, but that too is insufficient to preserve the issue for appellate review. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."). Provencio's failure to address this issue in her opening brief deprived Intel of the opportunity to respond to her belated factual assertions and arguments. *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994) ("[T]o allow an appellant to raise new arguments at this juncture would be manifestly unfair to the appellee who, under our rules, has no opportunity for a written response." (internal quotation marks omitted)). We see no compelling reason in this case to deviate from the rule that contentions not raised in an opening brief are forfeited.[4]

## III. Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[4] We have sometimes considered arguments raised for the first time in a reply brief because the appellant was responding to a contention raised in the appellee's brief. *See, e.g., Sadeghi v. I.N.S.*, 40 F.3d 1139, 1143 (10th Cir. 1994). The circumstances in this case are distinguishable.

10