F I L E D
United States Court of Appeals
Tenth Circuit

OCT 21 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SARAH YEAROUS; TONYA
CRISMAN; JONELL ROBINSON; and
CHINTAMANI FRAHM,

    Plaintiffs-Appellees,

v.

NIOBRARA COUNTY MEMORIAL
HOSPITAL, by and through its Board of
Trustees,

    Defendant-Appellant,

and

VICKI WINNEY,

    Defendant.

No. 96-8108

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 96-CV-1005)

---

John D. Whitaker (James R. McCarty with him on the brief), Casper, Wyoming, for
Plaintiffs-Appellees.

John G. Fenn (Michael K. Davis with him on the brief), of Yonkee & Toner, Sheridan,
Wyoming, for Defendant-Appellant.

Before BALDOCK, BRORBY, and BRISCOE, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiffs Tonya Crisman, Jonell Robinson, and Chintamani Frahm are registered nurses. Plaintiff Sarah Yearous is a licensed practical nurse. All are former employees of Defendant Niobrara County Memorial Hospital. Each resigned their employment with Defendant in August 1995. They subsequently brought this action alleging, among other things, that Defendant constructively discharged them from their employment, and in so doing deprived them of property without due process of law. See U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983. A jury returned a verdict for Plaintiffs and awarded them damages totaling $877,637.00. Defendant appeals the district court's denial of its motion for judgment as a matter of law claiming the evidence was insufficient to support the jury's finding of constructive discharge. See Fed. R. Civ. P. 50. Our jurisdiction arises under 28 U.S.C. § 1291. Because we conclude that the record is devoid of any evidence upon which a reasonable jury could return a verdict for Plaintiffs under the controlling law, we reverse the judgment of the district court and remand with instructions to enter judgment in favor of Defendant.

*Standard of Review*

2

We review de novo the district court's denial of a motion for judgment as a matter of law under Fed. R. Civ. P. 50. Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997). The standards governing our review are well established. We will reverse the denial of a Rule 50 motion only if the evidence points but one way and is susceptible to no reasonable inferences supporting the nonmoving party. Haines v. Fisher, 82 F.3d 1503, 1510 (10th Cir. 1996). "We do not weigh the evidence, pass on the credibility of witnesses, or substitute our conclusions for that of the jury. However, we must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim . . . under the controlling law." Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1450 (10th Cir. 1997) (internal quotations and ellipses omitted). Mindful of this standard, we turn to the present appeal.

I.

Reviewing the facts in a light most favorable to the Plaintiffs, see Harolds Stores, Inc. v. Dillard Dept. Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996), the record reveals that Niobrara County Memorial Hospital is a small rural health care facility in Lusk, Wyoming. The facility consists of a hospital with ten beds and a nursing home with thirty-six beds. The facility employs approximately sixty individuals, twelve to fourteen of whom are nurses. Ultimate responsibility for the operation of the facility rests with a six-member board of trustees. A hospital administrator is responsible for the facility's daily operations. A director of nursing supervises the facility's nursing staff.

3

In May 1995, a vacancy arose in the director of nursing position at the facility. While the board conducted a search to fill the position, Plaintiffs Crisman and Robinson helped perform the director's duties. Three individuals, including Vicki Winney, applied for the position. Winney is a registered nurse who at the time was employed in the nursing home portion of the facility. When one applicant rejected an offer from the board and another withdrew her application, Winney became the only remaining candidate for the position. Both Crisman and Robinson, each of whom previously had served as temporary directors of nursing at the facility, expressed reservations about Winney's qualifications. Although the board knew she was inexperienced and perhaps unqualified, on July 10, 1995, Winney became the director of nursing at Niobrara County Memorial Hospital. On July 15, the hospital administrator and Winney's immediate supervisor, Jeff Struble, left on a three-week vacation. Struble left Winney in charge of the nursing staff.

Problems arose on Winney's second full day as director. On July 12, 1995, Patient A arrived from the Wyoming Medical Center in Casper. Contrary to established procedure, staff admitted Patient A into the nursing home side of the facility without a doctor's order. Subsequently, a staff doctor ordered Patient A transferred to swing bed status, i.e., a level of intermediate care between full hospitalization and nursing care on the hospital side of the facility. Winney and Plaintiff Robinson disagreed about how to document Patient A's transfer to swing bed status. Because no record of Patient A's transfer from Casper to the nursing home existed, Winney suggested charting Patient A

4

into swing bed status directly from Casper. Robinson, however, insisted on charting Patient A in from the nursing home. Although Robinson testified that she believed Winney was asking her to falsify Patient A's records, Robinson completed the patient's transfer chart as she deemed proper and suffered no adverse consequences as a result.

Another problem arose on Winney's fifth full day as director. On July 17, 1995, a patient suffering from terminal cancer had a seizure. Winney and Plaintiff Yearous were present when the seizure occurred. Yearous asked Winney to obtain a doctor's order for medication to stop the seizure. Winney attempted to contact a doctor but was unable to do so. When Winney returned to the room, the patient's seizure had stopped. Consequently, Winney told Yearous that immediate medication was unnecessary. Yearous subsequently obtained a doctor's order for medication with Robinson's assistance. Yearous testified that she believed Winney was jeopardizing patient care. Yearous, however, did not file an incident report with Winney's superiors.

Problems continued when on July 26, 1995, Patient B arrived from United Medical Center in Cheyenne. Patient B had a wound on his left lower leg which required irrigation by means of a catheter placed inside the wound. Winney and Plaintiff Frahm disagreed about how to perform the patient's dressing change. Winney believed the change need only be completed in a "clean," rather than a "sterile" manner. When she witnessed Frahm performing the dressing change in a sterile manner, a heated discussion ensued in front of the patient. Frahm suggested that they continue their discussion

5

outside the patient's room. Their continued discussion resulted in an impasse. Frahm continued to perform the dressing change in the manner she felt appropriate without ramification.

Perhaps the most serious allegations against Winney concerned Patient C. On July 25, 1995, hospital staff admitted Patient C as an acute care patient with a skin disorder and confusion. On July 27, 1995, the attending physician ordered Patient C transferred to swing bed status because no nursing home beds were available. Winney's duties included utilization review for compliance with Medicare classifications and qualifications. Winney recognized that Patient C did not qualify for Medicare reimbursement because he had not spent the required three prior nights in acute care. According to Plaintiffs Robinson and Frahm, Winney suggested that the dates in Patient C's records be changed to qualify him for Medicare. On cross-examination, however, Robinson testified as follows:

> Q. And Ms. Winney comes up and looks at Patient C's chart; is that correct?
> A. Eventually she got his chart, yes.
> Q. And she's flipping through it as the three of you were there; is that right?
> A. She opened the chart. I didn't see the section she opened it to.
> Q. She opened the chart?
> A. Yeah. Yes.
> Q. And then your testimony is she said, "All we have to do is change these dates," correct?
> A. Correct.
> Q. And Chin Frahm immediately said, "I'm not changing anything," or words to that effect, right?
> A. That's correct.

6

Q. And Ms. Winney immediately replied, "No, no, no. I'm not asking you to change anything"; isn't that true?

A. That wasn't my interpretation of what she said.

Q. Well, I'm not talking about interpreting what she said. I'm talking about the words she spoke. She said, "No, no, no. I'm not asking you to change anything," didn't she?

A. She said, "No, no, no. I'm not asking you to change anything."

Q. Right. In fact, if there were going to be any change in Mr. C's status, that would require that Dr. Hawley change something; isn't that true?

A. I don't know from that point what --

Q. Well --

A. -- she said.

Q. We're not talking about what she said.

A. Or meant. I don't know what she meant.

Q. Well, I'm not talking about what she said or what she meant. I'm talking about what was required as a matter of policy by Medicare. As a matter of fact, it would require a doctor, Dr. Hawley, to change the patient's status, isn't that right, from swing bed to acute, or acute to swing bed?

A. It requires a doctor's signature, yes.

Aplt. App. Vol. II at 452. Frahm testified to essentially the same facts on direct examination. See Aplt. App. Vol. II at 534. In the end, Patient C's records remained unaltered and he failed to qualify for Medicare.

Plaintiff Crisman was on vacation the entire month of July. She testified, however, to two problems she experienced with Winney upon her return in August. The first concerned an attending physician's medication order. Confusion arose as to whether the physician wished to change the order. When the physician was unavailable, Winney instructed Crisman to contact the doctor on call for instructions. When Winney informed the attending physician of the situation he became upset and told Winnie the medication order was part of the patient's file. Winney then asked Crisman what she didn't

understand about the physician's order. Crisman testified that she did not feel Winney was supportive. The patient ultimately received the proper medication and the matter passed without incident.

The second problem between Winney and Crisman involved an individual with high blood pressure. The individual routinely came to the hospital to have his blood pressure checked. Two days in succession Crisman checked the patient's blood pressure. Both times Crisman informed him that his blood pressure was quite high and he should remain at the hospital while she contacted a doctor. Both times he refused and left. Crisman submitted reports of the incidents. Subsequently, Crisman became upset when she learned that Winney was reviewing the individual's medical file. After reviewing the file, Winney concluded that Crisman had done nothing improper.

During Administrator Struble's vacation, Plaintiffs Robinson and Frahm spoke with Lori Fields, the facility's director of finance, about these and other problems, namely staffing concerns, that all four Plaintiffs had with Winney. Fields in turn related Plaintiffs concerns to board vice-president Kenny DeGering. DeGering suggested Plaintiffs' concerns could wait until Struble returned from vacation. Neither Plaintiffs nor Fields ever spoke to Winney directly. On August 7, 1995, Struble returned from vacation. That same day, Plaintiffs Robinson, Frahm, and Crisman submitted complaints to Struble regarding Winney. Only then did Winney learn that the Plaintiffs were upset with her performance. Plaintiff Yearous did not submit a complaint. Before Struble could

8

complete his investigation, on August 9, 1995, all four Plaintiffs submitted their resignations and gave two weeks' notice. Plaintiffs chose to forego filing a grievance with the hospital's personnel committee.

To appease Plaintiffs, Struble discharged Winney the next day, August 10, 1995. Struble discharged Winney not because of any confirmed wrongdoing, but because of the turmoil within the facility and generally poor morale of the staff. That same evening, Winney met with the board of trustees at her request and explained her position. The board met with Struble the following day. When Struble informed the board that he had found nothing to substantiate Plaintiffs' allegations against Winney, the board directed him to reinstate her.

The board also instructed Struble to ask Plaintiffs to rescind their resignations and remain with the hospital while trying to resolve their differences with Winney. Despite his persistent pleas, Plaintiffs informed Struble that they would not rescind their resignations so long as Winney remained director of nursing. Winney personally asked Plaintiff Yearous to stay but to no avail. All four Plaintiffs had left the hospital by August 21, 1995, less than two months after Winney's appointment as director of nursing. Plaintiffs requested an informal hearing before less than the entire board, but the board offered them only a formal hearing before the entire board at its regularly scheduled meeting in August. Plaintiffs declined the offer and no hearing occurred. On September

9

7, 1995, Plaintiff Frahm unsuccessfully applied for the director's position knowing that Winney remained in the position. This lawsuit followed.

## II.

Over a decade ago we held that an employee's constructive discharge from a position in which the employee has a protectable property interest may be actionable under 42 U.S.C. § 1983. Bailey v. Kirk, 777 F.2d 567, 579 (10th Cir. 1985). To determine whether Plaintiffs in this case have a viable cause of action under § 1983, we first ask whether Defendant deprived Plaintiffs of a protected property interest. Plaintiffs were entitled to procedural due process, i.e., a hearing before the hospital's board of trustees, only if Defendant deprived them of property. Defendant acknowledges that Plaintiffs had a protected property interest in continued employment with the hospital by way of an implied contract. See Bishop v. Wood, 426 U.S. 341, 344 (1976) (property interest in employment may be created by an implied contract). Defendant submits, however, that Plaintiffs were not constructively discharged; rather Plaintiffs voluntarily resigned. If Plaintiffs resigned of their own free will, even as a result of Defendant's actions, then they voluntarily relinquished their property interests and, thus, Defendant did not deprive them of property without due process of law. See Parker v. Board of Regents of Tulsa Jr. College, 981 F.2d 1159, 1161-62 (10th Cir. 1992).

To determine whether a jury question exists as to the voluntariness of Plaintiffs' respective resignations, we consider the totality of the circumstances under an objective standard. See Parker, 981 F.2d at 1162; accord Hargray v. City of Hallandale, 57 F.3d 1560, 1570 (11th Cir. 1995). At the outset, we must determine if Plaintiffs have established that their resignations were involuntary based upon a reasonable person test. See Maez v. Mountain States Telephone and Telegraph, Inc., 54 F.3d 1488, 1502 (10th Cir. 1995). Among the factors we consider in determining the voluntariness of an employee's resignation are "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [s]he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether [s]he was permitted to select the effective date of resignation." Parker, 981 F.2d at 1162; accord Lenz v. Dewey, 64 F.3d 547, 552 (10th Cir. 1995); Cacy v. City of Chickasha, ___ F.3d ___, 1997 WL 537864 at *6 (10th Cir. 1997) (unpublished).

By comparison, "[a] resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice." Parker, 981 F. 2d at 1162. Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable. That is to say the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign. Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992). A plaintiff's subjective views of the situation are

11

irrelevant. <u>Irving v. Dubuque Packing Co.</u>, 689 F.2d 170, 172 (10th Cir. 1982); <u>accord</u> <u>Clowes v. Allegheny Valley Hospital</u>, 991 F.2d 1159, 1162 (3d Cir. 1993). Essentially, a plaintiff must show that she had "'<u>no other choice</u> but to quit.'" <u>Woodward</u>, 977 F.2d at 1401 (quoting <u>Irving</u>, 689 F.2d at 172) (emphasis in original); <u>accord</u> <u>Peterson v. Sweetwater County School Dist. No. 1</u>, 114 F.3d 1198, 1997 WL 312420 at *2 (10th Cir. 1997) (unpublished).

III.

According to Plaintiffs, they had no choice but to end their employment relationship with Niobrara County Memorial Hospital so long as Winney remained director of nursing. Plaintiffs faced the dilemma of disobeying their superior with its accompanying consequences, or following her orders which they believed were at best unethical and at worst unlawful. Plaintiffs claim Winney (1) compromised their ethics, (2) requested them to commit Medicare fraud, (3) jeopardized patient care, and (4) violated internal policies and procedures. Plaintiffs testified that Winney's conduct made them fear for their professional reputations and licenses, and an expert endorsed their concerns.

To be sure, this case exposes numerous instances of questionable judgment on behalf of all involved. The board exercised questionable judgment when it hired Winney as director of nursing. Administrator Struble exercised questionable judgment when he left on a three-week vacation four days after Winney assumed her duties. Winney

12

exercised questionable judgment in fulfilling her duties as director. Plaintiffs exercised questionable judgment in taking an "either she goes or we go" approach to the problem. But a series of questionable judgments leading to difficult working conditions does not alone support a claim of constructive discharge or unconstitutional misconduct.

The question is not whether working conditions at the facility were difficult or unpleasant. Nor is the question whether Winney was incompetent or unethical. Rather, the question at this stage is whether Plaintiffs, at the time of their respective resignations, had the opportunity to make a free choice regarding their employment relationship with Niobrara County Memorial Hospital. See Parker, 981 F.2d at 1162. On this record, we conclude as a matter of law that they did. Viewing the facts objectively and considering the totality of the circumstances as the law requires, we believe no reasonable jury could conclude that Plaintiffs were constructively discharged.

Applying the four factors we have considered in prior cases to determine the voluntariness of an employee's resignation, see Lenz, 64 F.3d 547, we first note that the board gave Plaintiffs an alternative to resignation, namely continuing to work and attempting in good faith to resolve their problems with Winney through internal procedures. Second, the facts illustrate that Plaintiffs understood quite well the choice the board gave them. Third, the board gave Plaintiffs an indefinite time period in which to choose by asking them to rescind their resignations and remain with the hospital. Finally, because the board did not want Plaintiffs to resign, Plaintiffs had complete control over

13

the effective date of their resignations.

Other factors also support our conclusion. The most serious allegations against Winney concerned her apparent desire to have Plaintiffs Robinson and Frahm alter the medical records of Patients A and C, respectively. The record is equivocal, however, as to what Winney was actually suggesting. Both Robinson and Frahm testified that when they confronted Winney, she stated she was not asking them to change anything. In the end, Robinson and Frahm proceeded as they deemed appropriate, nobody altered the patients' records, and Winney never took any personnel action against the two Plaintiffs. The facts at most suggest that Winney, who was unqualified to be director of nursing, asked Plaintiffs to do things which they believed were unethical and which they refused to do without repercussion.

Similarly, the other problems to which Plaintiffs testified, while perhaps cause for concern, were not so serious as to give a reasonable person no other choice but to resign. The problem that Plaintiff Yearous experienced with the seizure of the terminally-ill patient, that Plaintiff Frahm experienced with the dressing change of Patient B, and that Plaintiff Crisman experienced with the physician's medication order and the individual's high blood pressure, when considered in light of the entire record, are insufficient to support a claim of constructive discharge.

The time factor also supports our conclusion. The time frame in which the problems occurred leading to Plaintiffs' resignations was brief. See Tidwell v. Meyer's

14

Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged."). Winney began serving as director of nursing on July 12, 1995. Less than one month later on August 9, 1995, and only two days after Struble had returned from a three week vacation, Plaintiffs' submitted their resignations. Notably, Plaintiff Crisman had been on vacation the entire month of July and had worked under Winney only a week before submitting her resignation. In their attempt to get Winney discharged, which initially was successful but ultimately failed, Plaintiffs unreasonably refused to explore any option short of resignation.

The facts when viewed in a light most favorable to Plaintiffs and under the controlling law establish that Plaintiffs' resignations were voluntary, albeit as a result of unpleasant and difficult circumstances. Accordingly, Niobrara County Memorial Hospital did not deprive Plaintiffs of a protected property interest in their employment without due process of law. As we have concluded Plaintiffs' due process claims fail, Plaintiffs' related contract claims fail for the same reasons. The judgment of the district court is reversed and the cause remanded for the entry of judgment in favor of Defendant pursuant to Fed. R. Civ. P. 50.[1]

REVERSED AND REMANDED.

---

[1] Plaintiffs' motion to file a reply brief to Defendant's reply brief is denied. Defendant's motion to strike Plaintiffs' motion to file a reply brief is denied as moot.