FILED
United States Court of Appeals
Tenth Circuit

August 3, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

KIMBERLY HEUTZENROEDER,

Plaintiff - Appellant,

v.

MESA COUNTY VALLEY SCHOOL
DISTRICT 51,

Defendant - Appellee.

No. 09-1331
(D. Ct. No.1:08-CV-00846-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **HOLLOWAY**, and **HARTZ**, Circuit Judges.

---

Plaintiff-appellant Kimberly Heutzenroeder sued the Mesa County Valley School

District ("the District") under 42 U.S.C. § 1983 alleging: (1) a violation of her procedural

due process rights; and (2) a breach of her employment contract.[1]  The district court

concluded that Ms. Heutzenroeder could not demonstrate that the District affirmatively

terminated her employment or that it created an intolerable work environment causing a

constructive discharge.  Accordingly, the district court granted the District summary

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]Ms. Heutzenroeder also alleged a retaliation claim in her complaint, however, she
ultimately abandoned that claim.

judgment on both Ms. Heutzenroeder's claims. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In 2004, the District employed Ms. Heutzenroeder as principal of Redlands Middle School pursuant to a written contract that specified a fixed 210-day term of employment. This contract was renewed for similar 210-day terms in 2005, 2006, and 2007. Although the initial contract and the yearly renewals guaranteed Ms. Heutzenroeder a fixed salary, they did not guarantee a specific position within the district. Indeed, the initial contract explicitly states that "[n]othing contained herein shall confer, or be construed to confer, a right of Employee to a particular working assignment or duty, or the right to the continuation of a supplemental assignment or duty."

In 2007, the District hired Debra Bailey to serve as the Executive Director of Middle Schools, making her Ms. Heutzenroeder's immediate supervisor. Near the beginning of the 2007-08 school year, an incident occurred at Redlands Middle School that precipitated the conflict between Ms. Heutzenroeder and her superiors. That incident involved a graffiti message on a school wall threatening to kill a Redlands Middle School teacher. Unsatisfied with the manner in which Ms. Heutzenroeder addressed this incident, Ms. Bailey and Colleen Martin, the District's Executive Director of Human Resources, placed Ms. Heutzenroeder on a performance improvement plan ("PIP") on October 8, 2007. Ms. Heutzenroeder did not participate in formulating the PIP and she refused to sign it when it was presented to her.

The PIP outlined various general deficiencies in and specific problems with Ms. Heutzenroeder's performance as principal. It also provided for weekly meetings with Ms. Bailey to assess Ms. Heutzenroeder's progress and stated that if her performance did not improve by December 2007, "further disciplinary action will be taken up to and including reassignment or dismissal."

Soon after being placed on the PIP, Ms. Heutzenroeder submitted written grievances against Ms. Bailey and Ms. Martin. Although Ms. Heutzenroeder characterizes these written objections to the PIP as informal letters designed to start a dialogue with her superiors, the District construed them as formal grievances. Consequently, they were referred to the District's associate superintendent, Steve Schultz, who reviewed and denied them.

In early November 2007, Ms. Heutzenroeder requested and was granted a medical leave of absence from November 5 through November 26. Ms. Heutzenroeder claims, and the District does not dispute, that the reason for her medical leave was the stress she felt as a result of being placed on the PIP. On November 12, one week into her medical leave, Ms. Heutzenroeder applied for the position of education coordinator at St. Mary's Hospital. She maintains that she sought this alternative employment because, at that time, she believed her termination from the District was imminent. She did not inform any District employee that she was actively seeking alternative employment.

Upon her return from medical leave, Ms. Heutzenroeder met with Ms. Bailey four times—on November 26, December 3, December 10, and December 17—to discuss her

progress under the PIP. Although neither party provides specific evidence regarding the substance of these meetings, Ms. Heutzenroeder claims they were "meaningless." She was not, however, terminated during or after these meetings.

When Ms. Heutzenroeder returned from winter break without being fired, she no longer felt that her termination was imminent. Indeed, she testified that at that point she believed she and her superiors had "moved on" and that she had "made it." Nevertheless, on January 17, 2008, Ms. Heutzenroeder interviewed for a full-time position at St. Mary's Hospital.

The next day, Ms. Martin gave Ms. Heutzenroeder two hours' notice that she was to meet with Ms. Martin and Ms. Bailey to discuss her progress under the PIP. Ms. Heutzenroeder stated that she would only attend the meeting if there was another district employee present. Ms. Martin replied that it was not necessary to have a witness at the meeting and that none of the District employees Ms. Heutzenroeder had suggested could attend on such short notice. Ultimately, Ms. Heutzenroeder refused to attend the meeting, and as a result, she was placed on administrative leave for insubordination. The letter informing Ms. Heutzenroeder that she was being placed on administrative leave directed her to turn in her school badge and keys, refrain from speaking to other District employees about the matter, and refrain from coming onto the school premises except to attend school events as a parent.

On January 22, the District's attorney, David Price, contacted Ms. Heutzenroeder. During the conversation, Mr. Price informed her that the District was no longer interested

in her services and that he had been directed to negotiate a settlement to resolve the matter. At no point, however, did Mr. Price state that the District was terminating Ms. Heutzenroeder's employment. The parties were ultimately unable to reach a settlement agreement.

On January 28, Ms. Heutzenroeder accepted a full-time position at St. Mary's Hospital. On February 20, Ms. Martin sent her a letter stating that the District had decided to reassign her to the position of Dean of Students at Grand Junction High School for the remainder of the 2007-08 school year. The letter further stated that her salary would not be reduced during the 2007-08 school year and that if she renewed her Colorado teaching license she would be assigned to a teaching position the following year at a reduced salary. Finally, the letter informed Ms. Heutzenroeder that her administrative leave would end and that she was to begin her new position on February 27.

Shortly after receiving the February 20 letter, Ms. Heutzenroeder called Ms. Martin to explain that she believed she had already been fired. During this conversation, Ms. Martin stated unequivocally that the District had not terminated her employment and that Ms. Heutzenroeder was expected at work on February 27. When Ms. Heutzenroeder did not show up, Ms. Martin called her to inquire about her absence. Ms. Heutzenroeder stated that she had accepted a job at St. Mary's Hospital because she believed she had been fired by the District and that she did not intend to report to her new assignment. Ms. Martin reiterated that the District had not fired her. This conversation was the first time

the District learned that Ms. Heutzenroeder had obtained or even sought alternative employment. Indeed, the District continued to pay her salary from the time she went on administrative leave until the time she informed Ms. Martin that she had taken a position at St. Mary's Hospital.

On February 29, Ms. Martin sent Ms. Heutzenroeder another letter reiterating that "there has been no action on the part of the District or my office to terminate your employment involuntarily." The letter also stated that Ms. Heutzenroeder's "failure and refusal to report to work and perform services as assigned, and [her] acceptance of other private employment without notice to or consent of the District constitute[d] abandonment and breach of [her] employment contract with the District." Thus, the District considered Ms. Heutzenroeder's employment terminated by her own actions as of February 27.

In April 2008, Ms. Heutzenroeder filed this lawsuit alleging a violation of her procedural due process rights and a breach of her employment contract. The district court granted the District summary judgment, concluding that Ms. Heutzenroeder could not demonstrate an affirmative termination or a constructive discharge which, as a matter of law, precluded her from succeeding on her breach of contract and procedural due process claims. Ms. Heutzenroeder appeals from that decision.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same standard as the district court and considering all evidence in the light most favorable

to the non-moving party. *See, e.g.*, *D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 772 (10th Cir. 2010). "Summary judgment is appropriate only if 'there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)(2)).

A plaintiff asserting a procedural due process claim must establish: (1) the existence of a constitutionally cognizable liberty or property interest; and (2) a deprivation of that interest without an appropriate level of process or procedural safeguards. *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). We are concerned with both requirements in this appeal.

"[T]he range of interests protected by procedural due process is not infinite." *Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1972). To be constitutionally cognizable, "[a] property interest must be specific and presently enforceable." *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993). Indeed, when asserting a procedural due process claim based on the deprivation of a benefit, like employment, the plaintiff "'clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must have a legitimate claim of entitlement to it.'" *Id.* (quoting *Roth*, 408 U.S. at 577). Furthermore, property interests are not created by the Constitution itself; rather, they are derived from independent sources such as state laws, administrative rules, or "understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. In the public employment context, the Supreme Court has recognized that a public employee may have

a constitutionally cognizable property interest in continued employment if the employee is tenured pursuant to state law or if "there is a clearly implied promise of continued employment." *Id*. (citing *Connell v. Higginbotham*, 403 U.S. 207 (1971)).

Ms. Heutzenroeder defines her constitutionally cognizable property interest in this case as a continued expectation of future employment as principal at Redlands Middle School. Indeed, she argues that, similar to a tenured teacher, the District could only decline to renew her yearly contract for cause and after affording her certain procedures. The District, on the other hand, concedes that Ms. Heutzenroeder possessed a constitutionally cognizable property interest in her employment for the 2007-08 school year, but contends that her interest was limited to the 210-day fixed term and the salary specified in her employment contract.

In Colorado, teachers are considered "probationary" for their first three years of employment and are employed pursuant to yearly contracts. Colo. Rev. Stat. § 22-63-203. During the probationary period, Colorado school districts may decline to renew a teacher's contract for any reason and are only required to provide notice of and the reasons for non-renewal. *Id*. Indeed, Colorado law does not require that a probationary teacher be afforded any pre- or post-termination process. *Id*. Once a teacher's contract is renewed for a fourth year, however, the teacher is considered tenured and may only be terminated pursuant to the notice and hearing procedures provided by statute. *Id*. § 22-63-302; *see also Draper v. Sch. Dist. No. 1, City and Cnty. of Denver*, 486 P.2d 1048, 1049 (Colo. 1971).

It is well-settled that these statutory provisions do not provide tenure or other similar protections for principals and other administrators. *Draper*, 486 P.2d at 1049; *see also Wheeler v. Sch. Dist. No. 20*, *Cnty. of El Paso*, 535 P.2d 206, 208 (Colo. 1975). Furthermore, Ms. Heutzenroeder does not direct us to any Colorado statute or administrative rule that creates an entitlement to continued employment for principals who have been employed for a certain number of years.

Nevertheless, Ms. Heutzenroeder contends that it is the established custom of the District that once a principal's contract is renewed for a fourth year she may only be fired for cause and after being afforded adequate procedure. She does not, however, provide any evidence of this alleged custom other than her subjective belief that it exists and the fact that on her contract renewal form for the 2007-08 school year her professional status changed from "probationary" to "professional." Moreover, the District unequivocally denies the existence of such a custom. This paucity of evidence does not establish a mutual understanding creating an entitlement to future employment, nor does it demonstrate a clearly implied promise of future employment.

Likewise, Ms. Heutzenroeder cannot demonstrate a constitutionally cognizable interest in remaining as the principal at Redlands Middle School for the 2007-08 school year. Rather, the record demonstrates that Ms. Heutzenroeder's constitutionally cognizable interest is limited to her general employment for the 2007-08 school year and her promised salary for that year. Both her 210-day fixed term of employment and her annual salary were expressly promised in her contract renewal form. Thus, she can

demonstrate a legitimate claim of entitlement to those benefits. She cannot, however, demonstrate a similar legitimate claim of entitlement to employment as principal during the 2007-08 school year. Indeed, her contract clearly states, "[n]othing contained herein shall confer, or be construed to confer, a right of Employee to a particular working assignment or duty, or the right to the continuation of a supplemental assignment or duty." Thus, Ms. Heutzenroeder was entitled to remain employed by the District, in no specific capacity, for the 2007-08 school year and to receive the salary promised in her 2007-08 contract renewal form.

Having defined Ms. Heutzenroeder's constitutionally cognizable property interest, we turn to the second prong of her procedural due process claim. To fulfill this second prong, Ms. Heutzenroeder must demonstrate a deprivation of her general employment and promised salary for the 2007-08 school year by the District. Ms. Heutzenroeder concedes that the District never affirmatively terminated her employment, however, she contends that the District created an intolerable work environment that forced her to quit and seek other employment. In other words, she argues that she was constructively discharged.

Generally, whether a constructive discharge occurred is a question of fact to be resolved by the jury. *Strickland v. UPS*, 555 F.3d 1224, 1228 (10th Cir. 2009). When, however, the record does not give rise to a reasonable inference that a constructive discharge has occurred, the question is appropriately resolved by a judge as a matter of law. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1222 (10th Cir. 2002); *see also Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997) ("On this

record, we conclude as a matter of law that . . . no reasonable jury could conclude that Plaintiffs were constructively discharged.").

A constructive discharge occurs when an employer makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign. *Yearous*, 128 F.3d at 1356. It is not enough to show that the working conditions were merely "difficult" or "unpleasant." *Id.* at 1357. Rather, a plaintiff must demonstrate that he had "no other choice but to quit." *Id*. at 1356; *see also Garrett*, 305 F.3d at 1221 ("The bar is quite high in [constructive discharge] cases: a plaintiff must show he had no other choice but to quit."). Ultimately, the question is whether the plaintiff's resignation was involuntary to a reasonable person. *Yearous*, 128 F.3d at 1356. Therefore, "[a] plaintiff's subjective views of the situation are irrelevant." *Id.* "We determine the voluntariness of [a plaintiff]'s resignation under the totality of the circumstances, including whether he: 1) received some alternative to resignation; 2) understood the nature of his choice; 3) had a reasonable time in which to choose, and 4) was permitted to select the effective date of his resignation." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000).

On this record, the evidence does not give rise to a reasonable inference that a constructive discharge occurred. Indeed, a consideration of the above factors overwhelmingly supports the conclusion that Ms. Heutzenroeder voluntarily resigned. First, Ms. Heutzenroeder had an alternative to quitting at the time she abandoned her job—she could have finished the 2007-08 school year as Dean of Students at Grand

Junction High School.  Furthermore, she presents no evidence that a reasonable person would have found this alternative to be intolerable.  Second, Ms. Heutzenroeder is well-educated and has never claimed that she failed to understand the choice the District offered to her.  Third, Ms. Heutzenroeder had a reasonable time in which to choose: she had a week from the time she received notice of reassignment until her anticipated start date to choose between continuing employment with the District or resigning.  Finally, Ms. Heutzenroeder was on the District's payroll until she notified it on February 27 that she had accepted another position—only then did the District consider her employment ended.  Clearly, she chose the effective date of her resignation.  Thus, all of the enumerated factors support the district court's conclusion that Ms. Heutzenroeder voluntarily resigned her position with the District.

Other evidence also supports a finding of voluntariness.  Tellingly, Ms. Heutzenroeder began seeking other employment while on paid medical leave more than three months prior to her notice of reassignment, and she accepted another job several weeks before she was reassigned.  Furthermore, her reassignment cannot reasonably be viewed as an employer action that creates an intolerable work environment because she had no entitlement to a specific position and her pay was not reduced.  Accordingly, the district court correctly concluded that, as a matter of law, Ms. Heutzenroeder could not establish a constructive discharge.[2]

---

[2]Ms. Heutzenroeder's breach of contract claim also depends on her ability to demonstrate a constructive discharge.  Having concluded that she cannot, we do not consider her breach of contract claim further.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court and DISMISS the appeal.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

No. 09-1331, Heutzenroeder v. Mesa County Valley School District 51
**HOLLOWAY**, Circuit Judge, dissenting:

I respectfully dissent. I would hold that the district court erred in granting summary judgment to the Defendant School District and would reverse so that Plaintiff's evidence could be considered by a jury. I am convinced that the district court and the majority here have failed to consider the evidence in the light most favorable to Plaintiff and to draw all reasonable inferences in her favor. To explain my views, I begin with a brief review of the evidence taken in the proper light.

Plaintiff, who was a middle school principal at the relevant time, alleges that she was constructively discharged without due process. Plaintiff was in her fourth year in her position when a new administrator, Ms. Bailey, became her supervisor. Early in the school year, in October, Bailey put plaintiff on a performance improvement plan (PIP). Plaintiff believed from that time that Bailey wanted to fire her. The school system's history supported her fears: of the three or four principals who had been put on such plans in the past, all had been terminated.

Plaintiff also thought that the goals expressed in the plan were so vague that it would be difficult, if not impossible, to assess her progress.[1] She wrote two letters to Ms.

---

[1] The PIP had been prepared without Plaintiff's input, in apparent violation of state law. *See* Colo. Rev. Stat. §22-9-106(3.5), which provides that a PIP "shall be developed by the district . . . *and the teacher or principal*." (Emphasis added.) That statute goes on to direct that the principal be given "a reasonable period of time to remediate the deficiencies" and "a statement of the resources and assistance available" for the task. The District asserts (Defendant-Appellee's Brief at 26, n.3) that it complied with the statute. But the District cites no evidence that Plaintiff was given an opportunity to participate in formulation of the PIP, nor does it provide any basis on which we could conclude that the

Bailey and Ms. Martin, who was the District's personnel director, trying to get discussion on this. But Bailey and the district overreacted, construing the letters as formal grievances, which were denied.

As part of the PIP, Plaintiff met about five times with Bailey. But Plaintiff testified in deposition (and on summary judgment her testimony must be viewed favorably to Plaintiff) that Bailey was completely unhelpful in these sessions, refusing to clarify or even discuss the standards by which Plaintiff's progress would be measured. Moreover, Ms. Bailey did not put herself in a position to assess Plaintiff's progress or lack thereof towards reaching some of these goals. For instance, the PIP required Plaintiff to "[u]se collaborative processes to ensure all voices are heard, all outcomes are shared, and there are collective mission, vision, commitments, and goals which are widely communicated and shared." Because Ms. Bailey apparently never attended any faculty, staff, or committee meetings at which Plaintiff might have attempted to achieve these broadly stated goals, a reasonable juror could conclude that Bailey was not making an honest attempt to assess Plaintiff's progress. Accordingly, a reasonable juror could credit Plaintiff's belief that the PIP was a pretext to get rid of her, rather than a sincere attempt to guide Plaintiff toward improved performance.

---

quoted language means something other than that Plaintiff should have been afforded that opportunity. Defendant does note that the statute has been held not to provide a private right of action, *see Axtell v. Park School Dist.*, 962 P.2d 319, 321 (Colo. App. 1998), but Plaintiff has not contended that it does. Instead, Plaintiff apparently notes this fact as part of the totality of the circumstances involving her treatment by the District, and I find the fact is relevant for that limited purpose.

On January 18, 2008, a Friday, Plaintiff was summoned to a meeting on two hours' notice. Plaintiff did not attend the meeting, as the majority's review of the facts discloses. Although Ms. Martin stated in an affidavit that the purpose of the requested meeting would have been to discuss the PIP, Ms. Bailey herself later testified in deposition that the decision *had been made* that Plaintiff would not be offered the opportunity to remain in her position as principal the following year.

As the majority notes, Plaintiff was immediately suspended for insubordination for refusing to attend the meeting when her request that another person be present was refused. The suspension included a demand that Plaintiff turn in her keys, refrain from speaking to any other District employee about the matter, and not come onto school premises. Plaintiff testified that she believed that she was being fired. On the next business day, Plaintiff was visited by the school's attorney who told her that the District was no longer interested in her services. Also on that day Ms. Bailey notified parents that Plaintiff would no longer be the principal at the school. Plaintiff's theory is that she was constructively discharged either on that date, January 22, or eight days later when she accepted other employment. It was some weeks later, on February 20, when the District sent her a letter advising her that she had been assigned to a position at the high school.

Although the majority mentions some – but not all – of these facts in its recitation of the background of the appeal, none of them are mentioned in the two paragraphs that the majority devotes to applying the relevant legal principles to the facts of the case. The majority holds, by necessary implication, that this evidence fails to provide a sufficient

-3-

basis from which a reasonable jury could conclude that Plaintiff's working conditions had become so intolerable that a reasonable person would feel forced to resign.  Maj. op. at 11.  I strongly disagree.  I am perplexed that evidence that an employer sends a lawyer to tell an employee that she is not wanted is deemed insufficient to overcome summary judgment on this key issue.[2]

While the majority fails to mention – much less to credit – Plaintiff's evidence in its quite perfunctory discussion on the constructive discharge issue, it does devote attention to evidence that is simply irrelevant to the present task of assessing the evidence in the light most favorable to Plaintiff.  For example, we are told the exact date that the Defendant considered Plaintiff's employment to have ended (even while the facts that occurred on the date that Plaintiff considered that she had been constructively discharged are omitted from the majority's analysis).

"Tellingly," the majority says, Maj. op. at 12, Plaintiff had already considered other employment opportunities.  What is "telling" is how clearly this sentence reveals that the majority is not viewing the evidence in the proper light.  True enough, a reasonable jury could find it telling that Plaintiff had begun to look at other opportunities

---

[2]The majority weakly observes that the lawyer did not tell Plaintiff that she was terminated.  If he had, I point out that Plaintiff would not be relying on the theory of constructive discharge.  More importantly, the lawyer told Plaintiff, according to her testimony, that the District wanted her termination:  "the district is no longer interested in your services."  The lawyer also told Plaintiff that he had been asked "to negotiate a settlement for your contract . . . ."  Plaintiff testified that this, together with the demand that she turn in her badge, were "two very good indications that I didn't have a job anymore."

and could even conclude, as the majority does, that Plaintiff voluntarily abandoned her job. *But while a jury could draw this adverse inference, this court may not do so in reviewing summary judgment against Plaintiff.* That the majority appears to draw this inference in contradiction of the proper standard of review in this appeal is indeed telling.

The majority's analysis seems based entirely on four factors that we listed in *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000), and earlier cases. Although, as the majority's quotation from the case discloses, our analysis should be under the totality of the circumstances "including" the four listed circumstances, the majority's analysis seems to be limited to those factors. Common sense and our experience teach that not all factors will be relevant in all cases. I am particularly troubled by the majority's treatment of the first listed factor – whether the Plaintiff was given some alternative to resignation. Again, common sense and our experience counsel that not all alternatives are equally acceptable. But the majority here merely recites that Plaintiff was given an alternative without even asking whether a reasonable person in Plaintiff's position would have found it an intolerable one. Most significantly, the majority cites no evidence – and I have not found any evidence – that Plaintiff had been offered an alternative at the time she considered herself to have been terminated and so accepted employment elsewhere.

In sum, I would hold that the district court erred in its grant of summary judgment to the Defendant on this record. Plaintiff's evidence was sufficient for a reasonable jury to find in her favor on her constructive discharge claim. The most striking piece of

evidence is that the Defendant had told Plaintiff that she was not wanted.[3]  The most

glaring fault in the majority's reasoning is its failure to take account of this fact.  I must

respectfully dissent.

---

[3]During his conversation with Plaintiff on January 22, the District's attorney, Price, "informed her that the District was no longer interested in her services and that he had been directed to negotiate a settlement to resolve the matter."  Maj. op. at 4-5.  As previously noted, the majority opinion recites this fact in its "Background" section, but the majority apparently finds it of no significance, because it is not mentioned in the "Analysis" section.