*689 ORDER AND JUDGMENT*
DEANELL REECE TACHA, Circuit Judge.
Plaintiff-appellant Kimberly Heutzen-roeder sued the Mesa County Valley School District (“the District”) under 42 U.S.C. § 1988 alleging: (1) a violation of her procedural due process rights; and (2) a breach of her employment contract.[1] The district court concluded that Ms. Heutzenroeder could not demonstrate that the District affirmatively terminated her employment or that it created an intolerable work environment causing a constructive discharge. Accordingly, the district court granted the District summary judgment on both Ms. Heutzenroeder’s claims. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.
I. BACKGROUND
In 2004, the District employed Ms. Heutzenroeder as principal of Redlands Middle School pursuant to a written contract that specified a fixed 210-day term of employment. This contract was renewed for similar 210-day terms in 2005, 2006, and 2007. Although the initial contract and the yearly renewals guaranteed Ms. Heutzenroeder a fixed salary, they did not guarantee a specific position within the district. Indeed, the initial contract explicitly states that “[njothing contained herein shall confer, or be construed to confer, a right of Employee to a particular working assignment or duty, or the right to the continuation of a supplemental assignment or duty.”
In 2007, the District hired Debra Bailey to serve as the Executive Director of Mid-die Schools, making her Ms. Heutzenroe-der’s immediate supervisor. Near the beginning of the 2007-08 school year, an incident occurred at Redlands Middle School that precipitated the conflict between Ms. Heutzenroeder and her superiors. That incident involved a graffiti message on a school wall threatening to kill a Redlands Middle School teacher. Unsatisfied with the manner in which Ms. Heut-zenroeder addressed this incident, Ms. Bailey and Colleen Martin, the District’s Executive Director of Human Resources, placed Ms. Heutzenroeder on a performance improvement plan (“PIP”) on October 8, 2007. Ms. Heutzenroeder did not participate in formulating the PIP and she refused to sign it when it was presented to her.
The PIP outlined various general deficiencies in and specific problems with Ms. Heutzenroeder’s performance as principal. It also provided for weekly meetings with Ms. Bailey to assess Ms. Heutzenroeder’s progress and stated that if her performance did not improve by December 2007, “further disciplinary action will be taken up to and including reassignment or dismissal.”
Soon after being placed on the PIP, Ms. Heutzenroeder submitted written grievances against Ms. Bailey and Ms. Martin. Although Ms. Heutzenroeder' characterizes these written objections to the PIP as informal letters designed to start a dialogue with her superiors, the District construed them as formal grievances. Consequently, they were referred to the District’s associate superintendent, *690 Steve Schultz, who reviewed and denied them.
In early November 2007, Ms. Heutzen-roeder requested and was granted a medical leave of absence from November 5 through November 26. Ms. Heutzenroe-der claims, and the District does not dispute, that the reason for her medical leave was the stress she felt as a result of being placed on the PIP. On November 12, one week into her medical leave,'Ms. Heutzen-roeder applied for the position of education coordinator at St. Mary’s Hospital. She maintains that she sought this alternative employment because, at that time, she believed her termination from the District was imminent. She did not inform any District employee that she was actively seeking alternative employment.
Upon her return from medical leave, Ms. Heutzenroeder met with Ms. Bailey four times — on November 26, December 3, December 10, and December 17 — to discuss her progress under the PIP. Although neither party provides specific evidence regarding the substance of these meetings, Ms. Heutzenroeder claims they were “meaningless.” She was not, however, terminated during or after these meetings.
When Ms. Heutzenroeder returned from winter break without being fired, she no longer felt that her termination was imminent. Indeed, she testified that at that point she believed she and her superiors had “moved on” and that she had “made it.” Nevertheless, on January 17, 2008, Ms. Heutzenroeder interviewed for a full-time position at St. Mary’s Hospital.
The next day, Ms. Martin gave Ms. Heutzenroeder two hours’ notice that she was to meet with Ms. Martin and Ms. Bailey to discuss her progress under the PIP. Ms. Heutzenroeder stated that she would only attend the meeting if there was another district employee present. Ms. Martin replied that it was not necessary to have a witness at the meeting and that none of the District employees Ms. Heut-zenroeder had suggested could attend on such short notice. Ultimately, Ms. Heut-zenroeder refused to attend the meeting, and as a result, she was placed on administrative leave for insubordination. The letter informing Ms. Heutzenroeder that she was being placed on administrative leave directed her to turn in her school badge and keys, refrain from speaking to other District employees about the matter, and refrain from coming onto the school premises except to attend school events as a parent.
On January 22, the District’s attorney, David Price, contacted Ms. Heutzenroeder. During the conversation, Mr. Price informed her that the District was no longer interested in her services and that he had been directed to negotiate a settlement to resolve the matter. At no point, however, did Mr. Price state that the District was terminating Ms. Heutzenroeder’s employment. The parties were ultimately unable to reach a settlement agreement.
On January 28, Ms. Heutzenroeder accepted a full-time position at St. Mary’s Hospital. On February 20, Ms. Martin sent her a letter stating that the District had decided to reassign her to the position of Dean of Students at Grand Junction High School for the remainder of the 2007-08 school year. The letter further stated that her salary would not be reduced during the 2007-08 school year and that if she renewed her Colorado teaching license she would be assigned to a teaching position the following year at a reduced salary. Finally, the letter informed Ms. Heutzenroeder that her administrative leave would end and that she was to begin her new position on February 27.
Shortly after receiving the February 20 letter, Ms. Heutzenroeder called Ms. Mar *691 tin to explain that she believed she had already been fired. During this conversation, Ms. Martin stated unequivocally that the District had not terminated her employment and that Ms. Heutzenroeder was expected at work on February 27. When Ms. Heutzenroeder did not show up, Ms. Martin called her to inquire about her absence. Ms. Heutzenroeder stated that she had accepted a job at St. Mary’s Hospital because she believed she had been fired by the District and that she did not intend to report to her new assignment. Ms. Martin reiterated that the District had not fired her. This conversation was the first time the District learned that Ms. Heutzenroeder had obtained or even sought alternative employment. Indeed, the District continued to pay her salary from the time she went on administrative leave until the time she informed Ms. Martin that she had taken a position at St. Mary’s Hospital.
On February 29, Ms. Martin sent Ms. Heutzenroeder another letter reiterating that “there has been no action on the part of the District or my office to terminate your employment involuntarily.” The letter also stated that Ms. Heutzenroeder’s “failure and refusal to report to work and perform services as assigned, and [her] acceptance of other private employment without notice to or consent of the District constituted abandonment and breach of [her] employment contract with the District.” Thus, the District considered Ms. Heutzenroeder’s employment terminated by her own actions as of February 27.
In April 2008, Ms. Heutzenroeder filed this lawsuit alleging a violation of her procedural due process rights and a breach of her employment contract. The district court granted the District summary judgment, concluding that Ms. Heutzenroeder could not demonstrate an affirmative termination or a constructive discharge which, as a matter of law, precluded her from succeeding on her breach of contract and procedural due process claims. Ms. Heutzenroeder appeals from that decision.
II. DISCUSSION
We review a district court’s grant of summary judgment de novo, applying the same standard as the district court and considering all evidence in the light most favorable to the non-moving party. See, e.g., D.L. v. Unified Sch. Dist. No. 497, 596 F.3d 768, 772 (10th Cir.2010). “Summary judgment is appropriate only if ‘there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law.’ ” Id. (quoting Fed. R.Civ.P. 56(c)(2)).
A plaintiff asserting a procedural due process claim must establish: (1) the existence of a constitutionally cognizable liberty or property interest; and (2) a deprivation of that interest without an appropriate level of process or procedural safeguards. See Camuglia v. City of Albuquerque, 448 F.3d 1214, 1219 (10th Cir.2006). We are concerned with both requirements in this appeal.
“[T]he range of interests protected by procedural due process is not infinite.” Bd. of Regents v. Roth, 408 U.S. 564, 570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To be constitutionally cognizable, “[a] property interest must be specific and presently enforceable.” Doyle v. Okla. Bar Ass’n, 998 F.2d 1559, 1569 (10th Cir.1993). Indeed, when asserting a procedural due process claim based on the deprivation of a benefit, like employment, the plaintiff “ ‘clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must have a legitimate claim of entitlement to it.’ ” Id. (quoting Roth, 408 U.S. at 577, 92 S.Ct. 2701). Furthermore, property interests are not created by the Constitution *692 itself; rather, they are derived from independent sources such as state laws, administrative rules, or “understandings that secure certain benefits and that support claims of entitlement to those benefits.” Roth, 408 U.S. at 577, 92 S.Ct. 2701. . In the public employment context, the Supreme Court has recognized that a public employee may have a constitutionally cognizable property interest in continued employment if the employee is tenured pursuant to state law or if “there is a clearly implied promise of continued employment.” Id. (citing Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971)).
Ms. Heutzenroeder defines her constitutionally cognizable property interest in this case as a continued expectation of future employment as principal at Redlands Middle School. Indeed, she argues that, similar to a tenured teacher, the District could only decline to renew her yearly contract for cause and after affording her certain procedures. The District, on the other hand, concedes that Ms. Heutzenroeder possessed a constitutionally cognizable property interest in her employment for the 2007-08 school year, but contends that her interest was limited to the 210-day fixed term and the salary specified in her employment contract.
In Colorado, teachers are considered “probationary” for their first three years of employment and are employed pursuant to yearly contracts. Colo.Rev.Stat. § 22-63-203. During the probationary period, Colorado school districts may decline to renew a teacher’s contract for any reason and are only required to provide notice of and the reasons for non-renewal. Id. Indeed, Colorado law does not require that a probationary teacher be afforded any pre- or post-termination process. Id. Once a teacher’s contract is renewed for a fourth year, however, the teacher is considered tenured and may only be terminated pursuant to the notice and hearing procedures provided by statute. Id. § 22-63-302; see also Draper v. Sch. Dist. No. 1, City and Cnty. of Denver, 175 Colo. 216, 486 P.2d 1048, 1049 (1971).
It is well-settled that these statutory provisions do not provide tenure or other similar protections for principals and other administrators. Draper, 486 P.2d at 1049; see also Wheeler v. Sch. Dist. No. 20, Cnty. of El Paso, 188 Colo. 262, 535 P.2d 206, 208 (1975). Furthermore, Ms. Heutzen-roeder does not direct us to any Colorado statute or administrative rule that creates an entitlement to continued employment for principals who have been employed for a certain number of years.
Nevertheless, Ms. Heutzenroeder contends that it is the established custom of the District that once a principal’s contract is renewed for a fourth year she may only be fired for cause and after being afforded adequate procedure. She does not, however, provide any evidence of this alleged custom other than her subjective belief that it exists and the fact that on her contract renewal form for the 2007-08 school year her professional status changed from “probationary” to “professional.” Moreover, the District unequivocally denies the existence of such a custom. This paucity of evidence does not establish a mutual understanding creating an entitlement to future employment, nor does it demonstrate a clearly implied promise of future employment.
Likewise, Ms. Heutzenroeder cannot demonstrate a constitutionally cognizable interest in remaining as the principal at Redlands Middle School for the 2007-08 school year. Rather, the record demonstrates that Ms. Heutzenroeder’s constitutionally cognizable interest is limited to her general employment for the 2007-08 school year and her promised salary for *693 that year. Both her 210-day fixed term of employment and her annual salary were expressly promised in her contract renewal form. Thus, she can demonstrate a legitimate claim of entitlement to those benefits. She cannot, however, demonstrate a similar legitimate claim of entitlement to employment as principal during the 2007-08 school year. Indeed, her contract clearly states, “[n]othing contained herein shall confer, or be construed to confer, a right of Employee to a particular working assignment or duty, or the right to the continuation of a supplemental assignment or duty.” Thus, Ms. Heutzen-roeder was entitled to remain employed by the District, in no specific capacity, for the 2007-08 school year and to receive the salary promised in her 2007-08 contract renewal form.
Having defined Ms. Heutzenroeder’s constitutionally cognizable property interest, we turn to the second prong of her procedural due process claim. To fulfill this second prong, Ms. Heutzenroeder must demonstrate a deprivation of her general employment and promised salary for the 2007-08 school year by the District. Ms. Heutzenroeder concedes that the District never affirmatively terminated her employment, however, she contends that the District created an intolerable work environment that forced her to quit and seek other employment. In other words, she argues that she was constructively discharged.
Generally, whether a constructive discharge occurred is a question of fact to be resolved by the jury. Strickland v. UPS, 555 F.3d 1224, 1228 (10th Cir.2009). When, however, the record does not give rise to a reasonable inference that a constructive discharge has occurred, the question is appropriately resolved by a judge as a matter of law. See Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1222 (10th Cir.2002); see also Yearous v. Niobrara Cnty. Mem’l Hosp., 128 F.3d 1351, 1357 (10th Cir.1997) (“On this record, we conclude as a matter of law that ... no reasonable jury could conclude that Plaintiffs were constructively discharged.”).
A constructive discharge occurs when an employer makes working conditions so intolerable that a reasonable person in the employee’s position would feel forced to resign. Yearous, 128 F.3d at 1356. It is not enough to show that the working conditions were merely “difficult” or “unpleasant.” Id. at 1357. Rather, a plaintiff must demonstrate that he had “no other choice but to quit.” Id. at 1356; see also Garrett, 305 F.3d at 1221 (“The bar is quite high in [constructive discharge] cases: a plaintiff must show he had no other choice but to quit.”). Ultimately, the question is whether the plaintiffs resignation was involuntary to a reasonable person. Yearous, 128 F.3d at 1356. Therefore, “[a] plaintiffs subjective views of the situation are irrelevant.” Id. “We determine the voluntariness of [a plaintiff]’s resignation under the totality of the circumstances, including whether he: 1) received some alternative to resignation; 2) understood the nature of his choice; 3) had a reasonable time in which to choose, and 4) was permitted to select the effective date of his resignation.” Lighton v. Univ. of Utah, 209 F.3d 1213, 1222 (10th Cir.2000).
On this record, the evidence does not give rise to a reasonable inference that a constructive discharge occurred. Indeed, a consideration of the above factors overwhelmingly supports the conclusion that Ms. Heutzenroeder voluntarily resigned. First, Ms. Heutzenroeder had an alternative to quitting at the time she abandoned her job — she could have finished the 2007-08 school year as Dean of Students at Grand Junction High School. Furthermore, she presents no evidence *694 that a reasonable person would have found this alternative to be intolerable. Second, Ms. Heutzenroeder is well-educated and has never claimed that she failed to understand the choice the District offered to her. Third, Ms. Heutzenroeder had a reasonable time in which to choose: she had a week from the time she received notice of reassignment until her anticipated start date to choose between continuing employment with the District or resigning. Finally, Ms. Heutzenroeder was on the District’s payroll until she notified it on February 27 that she had accepted another position — only then did the District consider her employment ended. Clearly, she chose the effective date of her resignation. Thus, all of the enumerated factors support the district court’s conclusion that Ms. Heutzenroeder voluntarily resigned her position with the District.
Other evidence also supports a finding of voluntariness. Tellingly, Ms. Heutzen-roeder began seeking other employment while on paid medical leave more than three months prior to her notice of reassignment, and she accepted another job several weeks before she was reassigned. Furthermore, her reassignment cannot reasonably be viewed as an employer action that creates an intolerable work environment because she had no entitlement to a specific position and her pay was not reduced. Accordingly, the district court correctly concluded that, as a matter of law, Ms. Heutzenroeder could not establish a constructive discharge.[2]
III. CONCLUSION
For the foregoing reasons, we AFFIRM the decision of the district court and DISMISS the appeal.

 This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. Ms. Heutzenroeder also alleged a retaliation claim in her complaint, however, she ultimately abandoned that claim.

. Ms. Heutzenroeder’s breach of contract claim also depends on her ability to demonstrate a constructive discharge. Having concluded that she cannot, we do not consider her breach of contract claim further.