**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 22, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

GWENDOLEN DELOPEZ,

    Plaintiff - Appellant,

v.

BERNALILLO PUBLIC SCHOOLS;
DEMETRIA NAVARRETTE; KEITH
COWAN; TAMIE PARGAS; ERIC
JAMES,

    Defendants - Appellees.

No. 21-2119
(D.C. No. 1:19-CV-00735-JCH-KK)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **BRISCOE**, and **PHILLIPS**, Circuit Judges.
_____

Appellant Gwendolen Delopez appeals the district court's order granting

summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part

and reverse in part.

**BACKGROUND**

Delopez worked as an art teacher for Bernalillo Public School ("BPS")

System. From 2008 to 2018, she worked at Carroll Elementary School, within BPS.

During the 2017–2018 school year. Delopez claims that she was bullied by Carroll

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Elementary staff and administrators, particularly Principal Demetria Navarrette. Delopez now claims age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the New Mexico Human Rights Act ("NMHRA").

Delopez claims that Navarrette's age-discriminatory animus created an environment in which it was acceptable to make fun of and exclude her. Delopez alleges that at the beginning of the 2017–2018 school year, Navarrette made faces behind Delopez's back to the secretary, excluded Delopez during team-building exercises, allowed other employees to exclude her from their cliques, and made snide remarks to Delopez in front of other Carroll Elementary staff.

About ten days into the school year, Delopez left Carroll Elementary to pick up student artwork displayed at a nearby elementary school. She notified front-desk staff that she was leaving and signed out, but rather than wait in a line of other people waiting to speak with Navarrette, Delopez left without informing Navarrette that she was leaving. Navarrette gave Delopez a verbal warning for not notifying her directly before leaving school grounds. Delopez argued that other teachers had left the school without express permission and those teachers did not receive a verbal warning.

The issues extended into Delopez's classroom. On December 11, 2017, Delopez peeled a scab off a second-grade student in art class. The wound bled profusely. Delopez applied two band-aids and sent the student to the nurse's office. Delopez says that she accidentally mistook the scab for dried-on glitter glue.

Several days later, Navarrette sent Delopez a formal letter of reprimand for four separate events: (1) addressing an educational assistant in a harsh tone and

2

saying, "I'm talking to you"; (2) using a confrontational tone and body language with a BPS employee; (3) being rude on the phone to a different BPS employee when requesting information; and (4) peeling the scab off the student.[1] The letter warned Delopez that further action could result in termination of her contract.

Delopez signed the formal letter of reprimand but submitted a rebuttal letter about a week later. There, Delopez denied having used a confrontational tone with the educational assistant and asserted that she had spoken to her in a "calm, matter-of-fact voice." Suppl. App. at 96. Delopez attributed the complaint against her to misunderstandings, language barriers, and responding to rude tones directed at her first. She reiterated her position that the scab incident was an accident and noted that she immediately apologized to the student and obtained medical attention.

On March 23, 2018, Delopez received her end-of-year teaching evaluation from Navarrette, which was significantly lower than in past years. Delopez received only average scores in several categories, including (1) establishing a culture for learning; (2) managing classroom procedures; (3) participating in a professional community; and (4) growing and developing professionally. Navarrette specifically identified Delopez's lack of professionalism with colleagues and administrators as an area needing improvement. But the review was not wholly negative. Navarrette commended Delopez for her knowledge and use of resources as an art teacher. Even so, this was the lowest-rated evaluation Delopez had received in the past three years.

---

[1] The letter originally referred to "three issues" but listed four bullet points. On January 18, 2019, this letter was amended to properly list four issues.

On April 16, 2018, BPS Superintendent Keith Cowan sent an appointment memorandum to Delopez, approving her teaching contract with BPS for the upcoming 2018–2019 school year. He did so despite the letter of reprimand, her conflicts with Navarrette, and her lower scores on the annual evaluation. Delopez signed and accepted the 2018–2019 teaching contract.

On April 27, 2018, Delopez submitted a union grievance over the teaching evaluation. She denied committing any unprofessional behavior and instead asserted that her Carroll Elementary colleagues had acted unprofessionally. She attributed her lower annual evaluation scores to their being based on literacy standards inapplicable to art classes. She claimed that Navarrette had arbitrarily assigned grades for certain categories of the evaluation without giving a valid reason. For instance, Delopez complained of a low score for "Demonstrating Flexibility" that gave no basis for the score. (Navarrette provided some reasoning for lower scores in other categories.) Delopez also asked for more professional-development opportunities.

Though grievances are reserved for disputes arising from the union's Collective Bargaining Agreement, Eric James, the BPS Human Resources Director, still held a meeting with Navarrette and Delopez to resolve the disagreement. Navarrette did not modify Delopez's scores but agreed to give Delopez more opportunities for professional development in the upcoming school year. Navarrette stated that she looked forward to working with Delopez in the next year.

But on May 7, 2018, Delopez had further issues while teaching her first-grade art class. A male autistic student began running around erratically and hiding under

4

tables. Unprovoked, he "stabbed" another student with a pencil. Suppl. App. at 32. Fortunately, no students were injured. Delopez called the special-education teacher and the full-time first-grade teacher for help, but both were busy and unable to assist. While Delopez was on the phone with those two teachers, a female student from the class went under the desk, sat behind the male student, and held him from behind. The male student was subdued and appeared to be calm and content in this position. Concerned he would begin acting up again, Delopez instructed the female student to hold the male student's torso while Delopez held his legs so they could carry him down the hall to the special-education classroom. During the transport, the remaining students were left alone in the classroom for about forty-five seconds.

The male student originally resisted Delopez's efforts by kicking when she grabbed his legs, but after she told him to stop, he calmed down and did not resist. She maintained that she did not forcefully restrain him and that she was trying to keep the rest of the students safe because she was concerned the male student would again misbehave. Delopez insisted that she made the best choice given the situation.

Because she felt the office assistants were not helpful or polite to her when she had reached out in the past, Delopez did not call the main office during this incident. She also did not use her walkie-talkie to radio for help from other faculty. Her only attempts to control the student's behavior were telling him to stop and making two phone calls for help. No educational assistants were available to help in the classroom because of a substitute-teacher shortage.

BPS's Crisis Prevention Intervention ("CPI") training dictates that Delopez should have taken all the students into the hall, left the problem-causing student in the classroom, and then called for assistance from another teacher. BPS had only one designated CPI-certified teacher, and Delopez had never received nor requested CPI training. Though Delopez had received an individualized education plan for the male autistic student, she had not read it.

The next day, BPS placed Delopez on paid leave while it investigated the incident. Two days later, Navarrette issued a formal letter of reprimand stating that Delopez had exhibited egregious, unprofessional conduct by carrying the student out of the classroom. BPS claimed Delopez had endangered the male student, the female student, and the remaining students in the classroom. The letter asserted that Delopez had violated New Mexico law and Bernalillo School Board policy provisions that regulated physical restraint in public schools. BPS Human Resources Director James gave Delopez a copy of this letter, but Delopez refused to sign it.

After that, school officials—Navarrette, Superintendent Cowan, and James and BPS Human Resources Director Tamie Pargas—met with Delopez to discuss further administrative action.[2] At the meeting, James noted that the male student had not endangered the other students after he calmed down and stopped wielding a pencil as a weapon. Delopez maintained that "[the female student] was restraining him, and a

---

[2] Two meetings occurred on May 10, 2018: (1) a predetermination due-process meeting at 10:00 a.m. and (2) a final meeting at 2:00 p.m. in which Delopez's union representative was present. All discussion of the meeting here refers to the recorded meeting at 2:00 p.m.

student is not supposed to restrain another kid." Suppl. App. at 35. And she said that she had feared that if the female student released him from the restraint, "he [was] going to start this erratic behavior again." *Id.* She believed that her students' parents "would have approved of [Delopez] getting him out [of the classroom] instead of letting him [act up] again." *Id.* Delopez asserted that this formal reprimand did not relate to her conduct but was actually retaliation for the grievance she had filed on April 27.

James stated that BPS had sufficient cause to terminate Delopez's contract immediately and to file a complaint with the New Mexico Public Education Department ("PED"). But James pushed Delopez to voluntarily resign. As an incentive, James promised that the most recent letter of reprimand would not go in her file. He told Delopez that voluntarily resigning would enable her to reapply for other BPS positions, to renew her teaching license, and to receive pay for the rest of her contract. As another incentive, James also promised that the BPS administration would not take any action against Delopez's teaching license. James required Delopez to accept or decline those terms right then, without any additional time to consider her choices.

Delopez stated her belief that she was being discriminated against and was being pressured to resign.[3] But succumbing to the pressure, Delopez signed a

---

[3] Delopez did not articulate a specific motive, such as age, for the discrimination.

handwritten resignation letter. At the time of her resignation, Delopez was aged fifty-five years, and she was later replaced by an art teacher aged twenty-nine years.

About one month later, despite James's promises to the contrary, Pargas and Cowan reported the May incident to the PED. In turn, the PED case agent referred the case to the prosecution unit. Ultimately, the prosecution unit took "no action" and declined to prosecute Delopez. Suppl. App. at 126. Beyond this, the prosecution unit made no additional factual determinations.

In June 2018, Delopez timely filed an Equal Employment Opportunity Commission complaint for discrimination. After obtaining a right-to-sue letter, she brought this lawsuit against BPS, Navarrette, Cowan, Pargas, and James in the District of New Mexico, bringing ten claims relating to Defendants' allegedly discriminatory conduct. The district court dismissed all claims on summary judgment. *Delopez v. Bernalillo Pub. Schs.*, 558 F. Supp. 3d 1129, 1156 (D.N.M. 2021).

Delopez appeals that decision on five of the ten counts. Specifically, she appeals the grant of summary judgment against her following claims: (1) the constructive-discharge claim under the ADEA; (2) the constructive-discharge claim under the NMHRA; (3) the age-discrimination claim under the ADEA; (4) the age-discrimination claim under the NMHRA; and (5) the breach-of-contract claim under

New Mexico law.[4] Delopez contends that the district court did not make all reasonable factual inferences in her favor and erred in finding that she did not establish pretext on her age-discrimination claims. Delopez also argues that the district court erred in ruling that she did not raise a genuine issue of material fact on her constructive-discharge claims. Finally, Delopez claims that the district court improperly dismissed her breach-of-contract claim for failure to exhaust state administrative remedies.

## DISCUSSION

### I.    Standard of Review

We review de novo a grant of summary judgment under the same standard as applies in the district court. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). We draw all reasonable inferences and resolve all factual disputes for the nonmoving party. *Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1287 (10th Cir. 2022) (internal citation omitted). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[4] In Delopez's opening brief, she asks us to reverse the grant of summary judgment against five of her claims, those being claims I, IV, VII, VIII, and X. But in her reply brief, Delopez seems to enlarge her argument to include claims II and V, which are retaliation claims under the ADEA and NMHRA. Delopez specifically stated in her opening brief that she was not pursuing retaliation claims on appeal. This Court may not address arguments raised for the first time on appeal in a reply brief. *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019). Delopez has waived any arguments on Counts II and V.

II.    **Summary Judgment on the Discrimination Claims**

A.    **Age-Discrimination Claims Under the ADEA and NMHRA**

"[T]o succeed on a claim of age discrimination [under the ADEA], a plaintiff must prove by a preponderance of the evidence that her employer would not have taken the challenged action but for the plaintiff's age." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (internal citation omitted). Absent direct evidence of age discrimination, we apply the *McDonnell Douglas* three-step burden-shifting test. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). First, a plaintiff must make a prima facie case of age discrimination by showing that she was: (1) over forty years old; (2) otherwise performing satisfactory work; (3) terminated or constructively discharged from employment; and (4) replaced by a younger person. *Id.* The burden on this step is "not onerous." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (internal citation omitted); *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008) (holding that proof of actual or constructive discharge will satisfy the prima facie case). Once a plaintiff does so, the burden shifts to the employer to show a "legitimate, 'nondiscriminatory reason' for its 'adverse employment action.'" *Plotke*, 405 F.3d at 1099 (quoting *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003)). If the employer can provide that reason, the burden shifts back to the plaintiff to show the employer's given reason is pretext for discrimination. *Id.*

For an age-discrimination claim under the NMHRA, New Mexico courts use the *McDonnell Douglas* test as a guide. *Smith v. FDC Corp.*, 787 P.2d 433, 436–37 (N.M. 1990). Courts analyzing age-discrimination claims under the NMHRA are not bound by the exact constraints of the federal test. *Id.* Because Delopez provides no separate arguments under the NMHRA, however, we analyze both the ADEA and the NMHRA age-discrimination claims under the *McDonnell Douglas* test.

We assume, without deciding, that the district court correctly found that Delopez had shown a prima facie case of age discrimination and that Defendants had offered a legitimate, nondiscriminatory reason for the adverse employment action. *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017); *Johnson v. Weld County*, 594 F.3d 1202, 1211 (10th Cir. 2010). That leaves us needing to determine whether Delopez has raised a genuine issue of material fact that Defendants' proffered legitimate reason is a pretext for discrimination. *Plotke*, 405 F.3d at 1099.

For Delopez to show pretext under the ADEA, she "must show that age was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir. 1994) (internal citation omitted). Delopez must demonstrate that "there is enough inconsistency or implausibility in [her] employer's stated explanation for the firing that a reasonable trier of fact could find it unworthy of belief." *Roberts v. Int'l Bus. Machs. Corp.*, 733 F.3d 1306, 1309 (10th Cir. 2013) (internal citation omitted).

11

At bottom, Delopez has not provided evidence that Defendants were motivated by an age-discriminatory animus. Delopez was fifty-five years old when she resigned from BPS. But when she began working for BPS in 2008, she was already over forty years old. Delopez does not assert that any younger, similarly situated employees were treated differently from her. In fact, thirty-seven out of fifty-two Carroll Elementary staff members were over forty years old, and the average age of Carroll staff was forty-six years old. The record lacks any evidence that Defendants were motivated to remove Delopez because of her age. *Cone*, 14 F.3d at 531–32 (restating that a plaintiff must "show some correlation" between the alleged discrimination and her age); *Cates v. Regents of N.M. Inst. of Mining & Tech.*, 954 P.2d 65, 72 (N.M. 1998) ("[The plaintiff] did not produce evidence, circumstantial or direct, that a factfinder might reasonably use to conclude that [defendants] intended to discriminate.").

We see no genuine dispute about whether Defendants' actions were motivated by Delopez's age, as opposed to the episode in which she and a young female student carried the male autistic student from her classroom. Even if Delopez's actions were in fact defensible and necessary, that would not establish that Defendants' reasons for terminating her were pretextual. *Riggs v. Airtran*, 497 F.3d 1108, 1119 (10th Cir. 2007). Even after the lower performance evaluation, the numerous conflicts between Delopez and other staff, the scab incident, and the formal letter of reprimand, BPS still extended an offer to renew her contract for the next year. These circumstances do not support the notion that BPS was looking for a pretextual reason to fire

12

Delopez for her age. Instead, it suggests that BPS viewed Delopez as an acceptable teacher until she acted in a way that the administration could not ignore or justify.

We will not second-guess BPS's decision to terminate Delopez, originally made by those in the best position to evaluate the circumstances. *Riggs*, 497 F.3d at 1119. Defendants have consistently defended their actions as a response to the incident with the male student and we see no evidence of an age-based motivation. We affirm the district court's grant of summary judgment on Delopez's ADEA and NMHRA age-discrimination claims.

## B.    Constructive-Discharge Claims Under the ADEA and the NMHRA

The test for determining whether an employee was constructively discharged is the same under both Tenth Circuit and New Mexico law.[5] *See Gormley v. Coca-Cola Enters.*, 109 P.3d 280, 282 (N.M. 2005). Constructive discharge turns on whether the employer made working conditions intolerable by its illegal discriminatory acts. *Derr*, 796 F.2d at 344.

Delopez has failed to prove any discriminatory act. As previously stated, Delopez has not produced evidence that age discrimination motivated Defendants' actions. Constructive discharge is intertwined with the employer's discriminatory

---

[5] The full test for constructive discharge under the ADEA is whether the employer made working conditions so intolerable that a reasonable person would feel she has no choice but to resign. *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986); *James v. Sears, Roebuck & Co.*, 21 F.3d 989, 992 (10th Cir. 1994) (citation omitted). Because Delopez did not show an age-discriminatory animus, we need not discuss this test further. *See Derr*, 796 F.2d at 344.

motivation, and without such a motivation, there is no cognizable claim of constructive discharge under the ADEA or the NMHRA. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558 (10th Cir. 1994). We affirm the district court's grant of summary judgment to BPS on Delopez's constructive-discharge claims.[6]

## III.    Breach of Contract

The district court granted summary judgment to BPS on Delopez's breach-of-contract claim on the statutory ground that she had failed to exhaust her administrative remedies. *Delopez*, 558 F. Supp. 3d at 1155. An employee terminated from a New Mexico public school must follow the administrative process after receiving notice of termination and request a hearing with the local school board. N.M. Stat. Ann. § 22-10A-24(C) (2022). If the employee does not follow this process, the employee cannot bring a lawsuit in court. § 22-10A-24(C), (E), (F) (detailing the administrative-hearing process when an employee has been terminated); § 22-10A-25(A), (P) (explaining that the remedy to contest the administrative hearing result is binding arbitration and a court may review only the arbitration decision if it was obtained by corruption, fraud, deception, or collusion). On appeal, Delopez argues that the statute did not impose any requirement to exhaust administrative remedies, because she never received written notice of termination—a statutory requirement to trigger the administrative process.

---

[6] Because we affirm the district court's primary holding on the ADEA and NMHRA claims, we do not reach the alternative grounds for affirmance raised by Defendants.

In dismissing Delopez's contract claim for failing to exhaust administrative remedies, the district court relied heavily on *Sanchez v. Board of Education*, 362 P.2d 979 (N.M. 1961). *Delopez*, 558 F. Supp. 3d 1129, 1153–54. For the purpose of the breach-of-contract analysis, the district court first assumed that Delopez had proved de facto termination through her forced resignation. *Id.* at 1154 ("The Court will again assume without deciding that Plaintiff brought forward enough evidence from which a reasonable jury could conclude that she involuntarily resigned, and that her employment was, *de facto*, terminated."). The court next assumed, without deciding, that her resignation qualified as a constructive termination. *Id.* ("Plaintiff argues that when she resigned on May 10, 2018, she did so under pressure such that it was involuntary and constituted a constructive termination. Assuming that is the case, then Plaintiff had notice as of May 10, 2018, of her constructive termination.").

The district court determined that, because Delopez was *de facto* terminated, she was required to submit a written request for a hearing in front of the local school board to challenge her termination. *Id.* at 1154–55 (citing § 22-10A-24). Though the district court recognized that BPS did not provide Delopez a written notice of termination, it reasoned that this constructive termination was a satisfactory equivalent, putting Delopez on notice of her need to comply with the statutory administrative-appeal process. *Id.* at 1154. Delopez argues on appeal that the statute requires express written notice of termination to trigger the administrative-appeal process.

15

In *Sanchez*, the teacher was terminated—he did not resign. 362 P.2d at 441. So the school district provided him the necessary notice that triggered the administrative process.[7] *Id.* at 983; *see also Alarcon v. Albuquerque Pub. Sch. Bd. of Educ.*, 413 P.3d 507, 516 (N.M. Ct. App. 2017) ("The mandatory obligation given to superintendents and school boards on the procedure to follow before a certified school employee can be discharged could not be more clearly stated.").

The governing statute reads as follows:

> [A] licensed school employee who has been employed by a school district . . . for more than two consecutive years . . . and who receives a notice of termination pursuant to either § 22-10A-22 NMSA 1978 or this section may request an opportunity to make a statement to the local school board or governing authority on the decision to terminate the employee or assistant by submitting a written request to the local superintendent or state agency administrator within five working days from the date *written notice of termination is served upon the employee or assistant*.

§ 22-10A-24(C) (emphasis added). Under the plain language of this statute, written notice of termination is required. Defendants did not provide written notice of termination, so nothing activated the administrative-exhaustion requirements.

Nor did the court explain how the statutory administrative-exhaustion requirements would apply without Delopez's having received a written notice of termination. The statutory remedies do not apply to someone who resigns, even if that resignation is under pressure.

---

[7] Sanchez "was formally advised that his contract was not renewed and that he was recommended to be placed on retirement status." *Sanchez*, 362 P.2d at 980. The court held this formal advisement was sufficient and did not discuss whether it was written or verbal.

In asserting her breach-of-contract claim, Delopez alleges BPS breached her 2017-2018 teaching contract by constructively discharging her without "just cause" under the statute. § 22-10A-24(D). For BPS to terminate Delopez's teaching contract for the 2017-2018 school year, BPS must have had "just cause." *Id.* Just cause is any "reason that is rationally related to a school employee's competence or turpitude or the proper performance of the school employee's duties and that is not in violation of the school employee's civil or constitutional rights." § 22-10A-2(I). Delopez claims that BPS never had just cause to "constructively terminate or discharge" her from employment. App. at 29.

"The doctrine of constructive discharge is most often employed in the context of claims of workplace harassment." *Douglas v. Orkin Exterminating Co., Inc.*, 215 F.3d 1336, 2000 WL 667982, at *4 (10th Cir. 2000) (unpublished table decision). But the New Mexico Supreme Court has recognized that an employee may rely on constructive discharge "to recast a resignation as a de facto firing." *Gormley*, 109 P.3d at 282 (internal citation omitted). The employee may independently prove breach of contract by using constructive discharge to establish the wrongful termination. *Id.* In *Romero v. Gurule-Giron*, the New Mexico Court of Appeals ruled that a plaintiff may sustain a claim for breach of employment contract if the plaintiff can show the alleged constructive-discharge action "was equivalent to termination or suspension." No. A-1-CA-38376, 2022 WL 2665942, at *11 (N.M. Ct. App. Jul. 11, 2022) (unpublished) (internal citation omitted). And the court has recognized that

17

"overt pressure to resign" may constitute constructive discharge. *Gormley*, 109 P.3d at 283 (citing *Douglas*, 2000 WL 667982, at *4).

Delopez may pursue a breach-of-contract claim based on her allegation that Defendants constructively discharged her without just cause. The district court erred by granting summary judgment for Delopez's failure to exhaust administrative remedies. Delopez didn't have to exhaust those remedies without the proper notice, and the administrative-exhaustion requirements of § 22-10A-24 do not apply to an employee that resigns. We reverse the district court's grant of summary judgment to BPS on this claim and remand for further proceedings.

## CONCLUSION

We affirm the district court's order granting summary judgment to Defendants on Delopez's ADEA and NMHRA age-discrimination and constructive-discharge claims. We reverse the district court's order granting summary judgment on Delopez's state-law breach-of-contract claim and remand for further proceedings.

Entered for the Court

Gregory A. Phillips
Circuit Judge

18